875 So.2d 918 (2004)
STATE of Louisiana
v.
Mary ULOHO.
No. 04-KA-55.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
*921 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Dominick Tamburo, Kia M. Habisreitinger, Assistant District Attorneys, Gretna, LA, Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Mary Uloho, with obstruction of justice, a violation of LSA-R.S. 14:130.1. The defendant pled not guilty at arraignment. Defendant proceeded to trial on November 12, 2002 before a twelve-person jury, which returned a unanimous verdict of guilty as charged.
Before sentencing defendant on February 13, 2003, the trial judge denied defendant's "Motion for New Trial Alternatively Motion to Arrest the Judgment." After defendant waived delays, the trial judge sentenced defendant to serve twenty years of imprisonment at hard labor. The State filed a multiple offender bill of information alleging defendant to be a second felony offender, and defendant denied the allegations therein. After a hearing, the trial judge found defendant to be a second felony offender, vacated the original sentence, and imposed a sentence of twenty-five years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial judge denied defendant's timely motions to reconsider the original and multiple offender sentences. This timely appeal follows.

FACTS
On March 3, 2001, Terry Bean, an armored car driver, was the victim of an armed robbery at the Albertson's Grocery Store on Barataria Boulevard in Marrero. Detective Kevin Decker of the Jefferson Parish's Sheriff's Office responded to the scene and interviewed the victim. Detective Decker learned that the perpetrator was described as a black male wearing red clothing, a red hat and a black wig, driving a late model Lincoln Continental with a temporary license tag in the rear window. Detective Decker also learned that the suspect took Mr. Bean's gun and that Mr. Bean had a laceration on his head for which he sought medical attention. Approximately $15,000 in cash and checks was taken in the robbery.
Deputy Brent Coussou heard the broadcast of the suspect and the vehicle involved in the armed robbery. Approximately thirty minutes after hearing the broadcast, Deputy Coussou saw a Lincoln that matched the description of the suspect's vehicle near the Easy Serve in Lafitte. Deputy Coussou stopped the vehicle, ordered the passenger to place her hands on the ceiling of the car and ordered the driver to step out. Deputy Coussou, with the assistance of other officers, handcuffed the driver, Elton Thomas. He observed that the driver was wearing grey coveralls *922 over red sweat pants. The driver was handcuffed and placed in another officer's unit. When Deputy Coussou approached the Lincoln to speak to the passenger, Mary Uloho, Deputy Coussou observed a gun on the "hump" between the driver's and the passenger seats. Deputy Coussou also saw a wig and red clothing in the vehicle. Because defendant was being cooperative and because he had experienced problems with one set of his handcuffs, Deputy Coussou placed defendant unhandcuffed in the rear seat of his police car.
Deputy Coussou acknowledged that he did not search defendant, who was wearing a large sweat shirt, before placing her in the police car. Further, Deputy Coussou testified that defendant was left unattended in the unit for approximately fifteen or twenty minutes until she was removed from the unit, handcuffed, and searched when a female officer arrived on the scene. Meanwhile, Detective John Carroll interviewed a witness, Gerard Guichard, and brought the witness to see the Lincoln. Mr. Guichard identified the Lincoln as the one used in the armed robbery.[1]
Thereafter, Deputy Coussou drove the defendant to the Detective Bureau. Deputy Coussou noticed that defendant was "fidgeting" in the car. When he asked her what she was doing, defendant replied that the handcuffs were too tight. Deputy Coussou transferred defendant to the custody of the robbery detectives. Deputy Coussou testified that he asked another officer, Deputy Modica, to check under the seat where defendant was sitting, since suspects sometimes place things under the seat. However, he did not ask Deputy Modica to check under the front. When Deputy Coussou's shift ended at approximately 3:30 p.m., he went home without looking in the rear seat of his car.
That same day, the suspect vehicle was towed to the Detective Bureau and Detective Decker obtained a search warrant for the Lincoln. The resulting search yielded a purse containing documents bearing defendant's name and two handguns, one of which belonged to Mr. Bean. Another handgun was recovered from the front seat of the Lincoln. Red clothing, a black wig, and a bag containing checks were also recovered from the Lincoln. However, the cash was not found in the Lincoln, but was later discovered in Deputy Coussou's car. Detective Decker also learned that the vehicle had been rented from Enterprise Rent-A-Car in defendant's name.
Detective Carroll subsequently interviewed Elton Thomas and defendant. Defendant initially did not make any statements to Detective Carroll, but later said that she saw a "policeman take something out of her car and place it into his car." Detective Carroll notified Sergeant Joe Picone of defendant's statement, and an investigation ensued.
At approximately 7:30 that night, Deputy Coussou realized that he had left his handcuffs at the Detective Bureau. After confirming that the handcuffs were still there, Deputy Coussou returned to the Detective Bureau. While there, Deputy Coussou met with Lieutenant Toca and provided a written statement of the preceding events. Deputy Coussou was informed that he was being investigated as an accessory to an armed robbery. Deputy Coussou denied that he had placed the money in his police car and confirmed that defendant was the only person in the rear of his unit on March 3, 2001. Deputy Coussou, accompanied by Detective Decker *923 and Lieutenant Toca, checked underneath the front seat on the passenger and driver's side. Deputy Coussou found clear plastic bags, each containing $7,500 in cash and Albertson's deposit slips, under the driver's and passenger seats. According to Deputy Coussou, it was only possible to see the bags by getting on his hands and knees because the money was actually shoved under the "guard" on the back of the front seat. Deputy Coussou identified photographs of the money underneath the seat of his unit.
Later that night, Detective Decker interviewed four women, including Aletha Washington, Valeria Curtis, Wylene Hall, and Sharon Carletto. Two of the women, Valeria Curtis and Wylene Hall, testified at trial. Ms. Curtis and Ms. Hall testified that they were in a "holding cell" at the Jefferson Parish Correctional Center with defendant and some other women on the evening of March 3, 2001 and the early morning of March 4, 2001. Ms. Curtis testified that defendant told the women in the jail that she had been arrested for robbery. Ms. Curtis said that defendant inquired about contacting the arresting officer. Both Ms. Curtis and Ms. Hall testified that, when the women in the holding cell asked defendant the reason she wanted this information, defendant said she had placed something under the seat of the police car. However, defendant would not reveal what she had placed under the seat.
Ms. Curtis said that defendant seemed angry at the arresting officer and that defendant said she "wanted to bring him down." Ms. Curtis and Ms. Hall testified that one of the women in the cell contacted a deputy, who then questioned the women individually. When four of the women had the same statement, they were taken to the Detective Bureau and questioned.
Colonel Walter Gorman of the Jefferson Parish Sheriff's Office testified that no disciplinary action was taken against Deputy Coussou once the investigation into defendant's allegations was completed. However, Colonel Gorman stated that the allegations complicated the investigation of the robbery at Albertson's because the efforts of the police were shifted from investigating the robbery to determining whether there was a "bad" officer in their midst.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in granting the state's motion in limine.

DISCUSSION
Defendant contends that she was denied the right to present a defense because the trial judge granted the State's "Motion in Limine." The State responds that defendant's claim is moot because this Court granted her writ that challenged the trial court's ruling. We find that the State is correct.
On July 16, 2002, the State filed a "Motion in Limine" seeking to preclude defendant from referring during voir dire or argument or adducing evidence from any witness that defendant could be guilty as an accessory after the fact, LSA-R.S. 14:25. After a hearing on July 22, 2002, the trial judge took the matter under advisement and rendered a written judgment granting the State's motion on August 6, 2002.
Defendant thereafter sought supervisory writs with this Court, which granted the writ on September 18, 2002 The record as originally lodged contains the writ cover sheet which provides in pertinent part:
WRIT GRANTED.
(SEE ATTACHED)
However, the appellate record as originally lodged did not contain the attachment. On March 19, 2004, the appellate *924 record was supplemented with the attachment, which provides as follows:

WRIT GRANTED.
In the Motion in Limine at issue, the State moved the trial court to preclude the defendant from "referring during voir dire, opening or closing argument or adducing evidence from any witness that the defendant could be found guilty of violation [sic] of LSA-R.S. 14:25 Accessory after the fact." After the hearing on this motion on July 22, 2002, the trial judge took the matter under advisement. On August 6, 2002, the trial court rendered a judgment stating that "the Motion in Limine is hereby GRANTED." However, the trial judge did not provide reasons or specify any restrictions or parameters to this ruling.
In State of Louisiana v. Stacy, 96-0221 (La.10/15/96), 680 So.2d 1175, the Louisiana Supreme Court held that it was not error for the trial judge to refuse to allow defense counsel to read the definition of accessory after the fact to the prospective jurors during voir dire, because he believed that it would be confusing to the jury to read the definition of a crime not charged. However, in that case, the trial court allowed the defense to explore the theory that the defendant was an accessory after the fact during voir dire and throughout the remainder of the trial.
In the present case, we have carefully reviewed the writ application, exhibits, and the pertinent caselaw [sic], and we find that the trial court's blanket prohibition against any references or evidence concerning the crime of accessory after the fact is unduly broad and restrictive. While the trial court may deny the defense the opportunity to read the definition of accessory after the fact to the prospective jurors during voir dire, prohibiting any references or evidence concerning this crime would prejudice the defendant's right to present a defense. The defendant should not be so limited during voir dire or the presentation of her case and should be able [to] suggest and discuss alternative charges if they are supported by the evidence.
Accordingly, we vacate the judgment of the trial court prohibiting any references or evidence concerning the crime of accessory after the fact. However, nothing in this writ disposition otherwise limits the trial judge from controlling the admissibility of evidence according to law.
In this assignment, defendant asserts that "the defense was not afforded the opportunity to argue this theory of defense at all, during any part of the proceeding...." Defendant points out that the jury had a question about the difference between attempted obstruction of justice and the obstruction of justice. According to defendant, if the jury had been "made aware" of the offense of accessory after the fact, which carries a maximum five-year penalty, "[i]t is a likely scenario" that they would have found defendant not guilty of obstruction of justice.
However, defendant does not point to any trial court ruling after her writ was granted by this Court that prohibited her from urging the defense of accessory after the fact. Because this Court granted defendant's writ application and because a review of the record reveals no trial court ruling after the grant of the writ application that prohibited defendant from urging this defense, we do not find anything to review in this assigned error.
This assignment of error merits no consideration.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in denying the defense's requested jury charges.

*925 DISCUSSION

Defendant contends that the trial court erred in refusing to give her requested special jury instruction regarding the credibility of witnesses because the requested instruction was a correct statement of the law and did not require clarification. The State responds that the trial court properly denied the special charge because the subject matter was addressed in the general charge given by the court.
In this case, the defendant sought the following special charge:
If you believe that any witness in the case, either for the State or for the Defense, has willfully and deliberately testified falsely to any material fact for the purpose of deceiving you, I charge you that you are justified in disregarding the entire testimony of such a witness as proving nothing and unworthy of belief. You have the right to accept as true or reject as false the testimony of any witness accordingly as you are impressed with his or her veracity.
The trial court initially denied the defense's requested charge, but modified its ruling to include some of the requested language. Specifically, the trial judge proposed to add language from the special charge as follows: "`You can accept as true or reject as false the entire testimony of any witness or any portion of the testimony as you deem appropriate.'" However, the trial judge found that the general charge took into consideration the remainder of the proposed special charge. Nevertheless, defendant noted her objection.
Regarding the credibility of witnesses, the trial judge charged the jury as follows in pertinent part:
You, alone, shall determine the weight the evidence deserves and the credibility of witnesses. As the sole judges of the credibility of witnesses and the weight their testimony deserves, you should carefully scrutinize the testimony given and the circumstances under which the witness has testified. In evaluating the testimony of witnesses, you may consider their ability and opportunity to observe and remember the matter about which they testified, their manner while testifying, any reason they may have for testifying in favor of or against the State or the Defendant, and the extent to which their testimony is supported or contradicted by other evidence.
You can accept as true or reject as false the entire testimony of any witness or any portion of the testimony as you deem appropriate.
The testimony of a witness may be discredited by showing that the witness previously was convicted of a crime. The conviction does not necessarily mean that the witness is failing to tell the truth; it is a circumstance you may consider along with all other evidence in deciding whether you believe any or all of the testimony.
According to LSA-C.Cr.P. art. 802, the court shall charge the jury as to the law applicable to the case, that the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court, and that the jury alone shall determine the weight and credibility of the evidence. Under LSA-C.Cr.P. art. 807, a requested special jury charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. Article 807 also provides that the special charge need not be given if it is included in the general charge or in another special charge to be given.
With the exception of a few words, the requested special charge in the present case is identical to a jury charge challenged *926 by a defendant on appeal in State v. Prestridge, 399 So.2d 564, 577 (La.1981). The Louisiana Supreme Court stated that the charge, when read as a whole, was a fair statement of the jury's function as the trier of fact and judge of credibility. Likewise, in State v. Walters, 582 So.2d 317, 323 (La.App. 4 Cir.1991), writ denied, 584 So.2d 1171 (La.1991), the court, citing Prestridge, supra, rejected defendant's challenge to the general charge on credibility that included a virtually identical recitation of the requested special charge in the instant case.
Based on Walters and Prestridge, we find that defendant's special requested charge is a correct statement of the law and does not require qualification. However, we fail to find that the trial judge erred in refusing the charge. In State v. Linden, 154 La. 65, 97 So. 299, 300 (1923), the Louisiana Supreme Court held that the trial court did not err in refusing a similar special charge because the "special charge requested by defendant's counsel announced such a trite and fundamental proposition that we assume the jury had enough intelligence without it." The charge in Linden provided in pertinent part: "[I]f a witness testifies deliberately and knowingly and falsely respecting any material fact, the jury is justified in disbelieving all the testimony of this particular witness unless corroborated." Id. at 300.
The Linden court pointed out that the jury was told in the general charge that it was the judge of credibility of witnesses and might believe or doubt testimony for any good reason. Since Linden held that the judge did not err in refusing a similar charge, we fail to find that the trial judge erred in refusing the special charge. Further, the requested special charge is included in the general charge given by the court, which essentially tracks the general instructions for criminal cases as provided in the Louisiana Civil Law Treatise. See, Cheney C. Joseph, Jr. and P. Raymond Lamonica, 17 Louisiana Civil Law Treatise: Criminal Jury Instructions § 3.04 (1994).
In any event, the failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, 937, cert. denied, ___ U.S. ___, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004), citing State v. Marse, 365 So.2d 1319, 1322 (La.1978). Defendant argues she was prejudiced because the jury was not told that it could disregard the entire testimony of Wylene Hall, whom defendant contends lied about her prior convictions during her testimony. According to defendant, Ms. Hall's testimony was the most damaging because only she testified that defendant "was setting up a cop." The record does not support defendant's position in several respects. First, it is reasonable to infer from her testimony that Ms. Hall was confused about her prior convictions. Ms. Hall stated on direct examination that she was incarcerated for "two distribution charges and one being on film, selling to an undercover officer out of uniform." She denied that she had any convictions for any other crimes.
On cross-examination, Ms. Hall was questioned about a possession of cocaine charge, to which Ms. Hall said she pled guilty, and a prostitution charge, which Ms. Hall denied. From her testimony, it is apparent that Ms. Hall was confused about the number of drug convictions that she had. Although defense counsel read into the record the text of a purported a minute entry indicating that a Wylene S. Hall with the same date of birth pled guilty to prostitution, that minute entry is *927 not in the record, nor is there any other evidence that the witness was the same person who pled guilty to prostitution.
Moreover, Ms. Hall's testimony was not the sole evidence of defendant's statement. Ms. Curtis testified that defendant told her and several other women that "she had placed something in the car, underneath the seat on the driver's side in the police car." Ms. Curtis further said that defendant said she wanted to "bring him down." Thus, Ms. Hall's testimony was not the sole evidence of the defendant's statement.
Considering the foregoing, we conclude that the trial judge properly denied the requested instruction because the general charge was adequate and because the record reveals no miscarriage of justice, prejudice or violation of defendant's rights involved in this assignment of error.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
The trial court erred in failing to sustain the defense's objection to the state's improper closing argument.

DISCUSSION
Defendant contends that the trial court erred in allowing the State to refer to defendant's subpoena power in rebuttal because the remarks misled the jury into believing that defendant had the burden of proving her innocence. The defendant also contends that the trial judge should have sustained her objection to the prosecutor's explanation in rebuttal for the absence of the witnesses who overheard the defendant's statement. The State responds that the prosecutor's argument in rebuttal answered the defense's closing argument that the State had failed to call certain witnesses.
LSA-C.Cr.P. art. 774 defines the scope of argument and rebuttal:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Nevertheless, a conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, 846. Further, a prosecutor retains "considerable latitude" when making closing arguments. State v. Snyder, supra, quoting, State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).
In closing argument, the defense argued that it was "astonishing" that no police officer who was on the scene after the traffic stop was called to testify to corroborate Deputy Coussou's testimony. The defense also urged that it was "strange" that only two of the four women who allegedly overheard defendant's statement in the holding cell were called to testify. Further, the defense focused on the absence of the deputy to whom the women allegedly reported what they had heard.
The trial court overruled defendant's objection to the following comments made by the prosecutor during rebuttal: "Mr. Creech has problems about how we present our case to you; why didn't we call this witness, why didn't we call that witness. Poor Mr. Creech. Mr. Creech has the same subpoena power the State has."
The trial court also overruled the defendant's objection when the prosecutor said *928 that "Mr. Creech can call any witness that I can call. He has the same subpoena power I do." Finally, the trial court overruled the defendant's objection when the prosecutor addressed the absence of the other witnesses who overheard defendant's statement:
Again let me tell you, yes, we said we'd have four women; we only presented two. Again, these people are criminals. They don't like to associate with law enforcement. We were fortunate to get the two we had and we were able to present them to you. Again, the Defense has
According to defendant, the trial court was required to admonish the jury pursuant to LSA-C.Cr.P. art. 771, which provides for a mistrial or an admonishment under certain circumstances. However, defendant fails to point out that Article 771 provides for remedies upon request by one of the parties. In the present case, defendant did not ask for a mistrial or an admonishment.
In this case, the defense invited the jury in closing arguments to disbelieve Deputy Coussou, Ms. Hall and Ms. Curtis because the State did not call other witnesses to corroborate their testimony. The prosecutor's comments about the defendant's subpoena power in rebuttal were in response to those remarks. See, State v. Daniels, 32,017 (La.App. 2 Cir. 5/5/99), 740 So.2d 691, 697, writ denied, 99-1599 (La.11/12/99), 749 So.2d 651, which found that the prosecutor's remarks that defendant could have subpoenaed witnesses the State did not call was in response to defense counsel's closing argument, which raised the issue of the State's failure to subpoena a witness.
The Louisiana Supreme Court has recognized that "much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 258, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538, (1996). Here, the trial judge instructed the jury that the opening statements and the closing arguments of the attorneys were not to be considered as evidence. The judge also instructed the jury that the defendant was not required to call any witnesses or produce any evidence. Considering the prosecutor's remarks in context, we find that the remarks were in response to defendant's closing argument. Even if improper, we fail to find that the remarks contributed to the verdict. Thus, the trial court did not err in overruling the defendant's objections.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The trial court erred in finding Ms. Uloho to be a second felony offender.

DISCUSSION
Defendant contends that the trial court erred in finding her to be a second felony offender because the State failed to prove the 1994 Ohio predicate conviction for felonious assault would be a felony if committed in Louisiana. Defendant also contends that the trial judge erred in admitting State's Exhibit 3 and 4. The State responds that defendant conceded that the Ohio offense is a felony under the laws of the State of Louisiana. The State further responds that the trial court properly admitted its exhibits.
For a conviction from another state to serve as a predicate felony for purposes for enhancement, the conviction must be for a "crime which, if committed in this state would be a felony...." See, *929 LSA-R.S. 15:529.1(A)(1). Louisiana courts must determine the analogous state crime according to the nature of the act involved, not the penalty provided for the offense in the foreign jurisdiction. State v. Carouthers, 618 So.2d 880, 882 (La.1993); State v. Hennis, 98-665 (La.App. 1 Cir. 2/19/99), 734 So.2d 21, 24, writ denied, 1999-783 (La.7/2/99), 747 So.2d 16.
In the instant case, the multiple offender bill of information alleged defendant was a second felony offender because she pled guilty to violating Ohio Revised Code Section 2903.11(A)(2) on "April 4, 1994," and was sentenced on May 31, 1994 in case number 93-CR-2770. Prior to the hearing, defendant filed objections to the multiple offender bill on several grounds, including that the arrest documentation was inadmissible hearsay and that the predicate Ohio conviction could either be a felony or a misdemeanor under Louisiana law.
The multiple offender hearing began on April 1, 2003. At the conclusion of the State's evidence, defendant objected on the basis that the Ohio conviction, felonious assault, was not necessarily a felony in Louisiana. The trial court held the matter open until April 9, 2003. At that hearing, the prosecutor offered State's Exhibit 5 to prove that defendant's conduct underlying the conviction constituted a felony in Louisiana. State's Exhibit 5 consisted of numerous documents that each contained a raised seal for the Dayton Municipal Court in Dayton, Ohio and a signature of the deputy clerk for the Dayton Municipal Court. These documents appear to relate to the police investigation into a complaint of a felonious assault involving defendant.
At the hearing, defense counsel stated as follows regarding State's Exhibit 5:
MS. GLORIOSO [defense counsel]:
Your Honor ... the issue last week was ... that felonious assault in the State of Ohio, I believe [could be a] felony or misdemeanor depending upon the facts as they occurred.
Mr. Tamburo has provided me with a certified copy of the police report from Ohio which does, in fact, state that the victim in that felonious assault was, in fact, struck with a bullet and did require medical attention which makes that an aggravated battery in this state. The only objection we're going to have is that there's no one here to testify to those facts.
The trial judge admitted State's Exhibit 5 over defendant's objection.
According to Ohio Revised Code Section 2903.11 as it existed in 1994 when defendant pled guilty, felonious assault was defined as follows:
2903:11 FELONIOUS ASSAULT
(A) No person shall knowingly:
(1) Cause serious physical harm to another;
(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
(B) Whoever violates this section is guilty of felonious assault, an aggravated felony of the second degree. If the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, felonious assault is an aggravated felony of the first degree.
Defendant urges on appeal that the State failed to prove that felonious assault would constitute a felony if committed in Louisiana, while the State responds defendant conceded the offense would constitute an aggravated battery in Louisiana. We find that the State is correct. Based on the remarks of defense counsel, we find that defendant abandoned her former position and conceded that the offense would *930 constitute aggravated battery, which is a felony in Louisiana.[2]
Defendant next contends that the trial judge improperly admitted State's Exhibits 3 and 4 because they were not properly certified pursuant to LSA-R.S. 15:529.1(F). At the multiple offender hearing, defendant objected to State's Exhibit 3 because it was not certified by the warden in Ohio, as required by LSA-R.S. 15:529.1(F). Regarding State's Exhibit 4, defendant objected on the basis that the first page of the exhibit contained a seal but no certification, while the second page contained a certification but no seal. The trial court overruled defendant's objections.
State's Exhibit 3 consists of four pages. The first page contains an indictment and a summons for Mary L. Uloho also known as "Lady Lace," for felonious assault (firearm specification) in case number 93-CR-2770. The second page appears to be a commitment in the same case number, from the Common Pleas Court for Montgomery County, Ohio, indicating Mary L. Uloho was convicted of felonious assault and indicating her sentence. The document is signed by "Judge Patrick J. Foley." The third page of State's Exhibit 3 is an indictment in the same case number alleging that on or about August 21, 1993, Mary L. Uloho also known as Lady Lace did "knowingly cause or attempt to cause physical harm to another, to-wit: James M. Wardsworth, by means of a deadly weapon, to wit: a .25 caliber Lorcin semi-automatic firearm; contrary to the form of the statute (in violation of Section 2903.11(A)(2)....") (Emphasis in the original.) The next paragraph alleges that the grand jurors found Mary L. Uloho had a firearm on or about her person or under her control in violations of Sections 29.71 and 2941.141 of the Ohio Revised Code. The fourth page appears to be a continuation of the indictment and contains the signature of the prosecutor.
State's Exhibit 4 is comprised of two pages. The first page is entitled "ENTRY OF WAIVER AND PLEAS ON INDICTMENT" for the Common Pleas Court for Montgomery County indicating that Mary L. Uloho pled guilty to felonious assault "2903.11A(2), (AF-2) (delete gun from body)." The form is signed by "Mary L. Uloho" and an attorney. Additionally, the page contains a raised seal for the Common Pleas Court for Montgomery County.
The second page of State's Exhibit 4 is entitled "ENTRY AND ORDER" and provides that "the above-named defendant" appeared on April 14, 1994, was orally advised by the court of the content of the "above Entry of Waiver and Plea on Indictment." The page contains a printed stamp that the document is a true copy and signature of the deputy clerk for the Common Pleas Court in Montgomery County.
LSA-R.S. 15:529.1(F) provides as follows:
The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person *931 imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
It is undisputed that the documents in State's Exhibit 3 do not comply with LSA-R.S. 15:529.1(F), since they do not contain a certificate of the appropriate officer under seal. However, the State responds LSA-R.S. 15:529.1 does not provide the exclusive method of proof. See, State v. Bernard, 366 So.2d 1294, 1296 (La.1978), "the proof set forth in R.S. 15:529.1 F is neither sacramental nor the exclusive method of proving that defendant is a habitual offender, and the necessary facts constituting proof that the accused is an habitual offender may be established by other competent evidence." Rather, the State asserts that the exhibits were properly admitted citing LSA-C.E. art. 902, which provides in pertinent part:
Art. 902. Self-authentication
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
(2) Domestic public documents not under seal. (a) Domestic public documents generally. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in Paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
(b) Certified Louisiana public documents. A purported record, book, paper, or other document of the State of Louisiana, or of a department, board, or agency thereof or of a political subdivision of the state or a department, board, or agency of such a subdivision when certified as being the original by an officer or employee who identifies his official position and who either has custody of the document or who is otherwise authorized to make such a certification.
Further, LSA-C.E. art. 904 provides that
[w]hen an original public document is deemed authentic without proof by extrinsic evidence as provided in Article 902(1), (2), or (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1), (2), or (3).
In the present case, State's Exhibit 3 does not meet the criteria in LSA-C.E. art. 902(1) for self-authentication because none of the pages contains both a seal and a signature. See, State v. Donald, 99-3612 (La.12/8/00), 775 So.2d 1054, which stated that Article 902(1) requires a seal and a *932 signature to admit public documents from other jurisdictions without extrinsic evidence of authenticity. Likewise, State's Exhibit 3 does not satisfy paragraph 902(2) because none of the pages contain the additional signature of an official with a seal.[3]
Turning to State's Exhibit 4, the first page is the waiver of rights form and contains only a raised seal, but no signature. The second page is the Entry and Order indicating the judge accepted a female defendant's guilty plea on April 14, 1994. It contains a signature of the deputy clerk of court under seal. Therefore, the first page of State's Exhibit 4 is not self-authenticating, while the second page, the Entry and Order, is self-authenticating. In spite of the fact that there is no name of a defendant on the Entry and Order, there is no case number on the page, and there is no offense listed, it appears that the Entry and Order, combined with other evidence, established the defendant's status as a second felony offender.
As stated in State v. Bernard, supra, in a habitual offender proceeding, the State is only required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. See also, State v. Payton, 00-2899 (La.3/15/02), 810 So.2d 1127, 1131; State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 610, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971. Further, when the State seeks to use a prior guilty plea to enhance punishment under LSA-R.S. 15:529.1, the State need prove only the fact of conviction and that the defendant was represented by counsel (or waived counsel) at the time he entered his plea. State v. Zachary, 01-3191 (La.10/25/02), 829 So.2d 405, 407, citing State v. Shelton, 621 So.2d 769, 779-80 (La.1993). Thereafter, the defendant bears the burden of proving a procedural defect in the proceedings or an infringement of his constitutional rights. If the defendant meets his burden, the State must prove the constitutionality of the predicate plea. Id.
In the present case, the State established defendant's identity in the prior conviction through the State's fingerprint expert, who testified that the fingerprints on State's Exhibit 1, which was a card containing defendant's fingerprints obtained on the day of the multiple offender hearing, matched the fingerprints on State's Exhibit 2, which was a copy of fingerprints taken on February 15, 1994 containing defendant's name, birthday and the case number, 93-CR-2770. These exhibits were admitted without objection.
Further, State's Exhibit 5 contains a properly authenticated document that indicates Mary L. Uloho was indicted for felonious assault and pled guilty as charged without the firearm specification on April 14, 1994 and was sentenced to three to fifteen years on May 26, 1994 in case number 93-CR-2770. The document contains the name of defense counsel, along with Mary L. Uloho's personal information, including her birthday, which matches the birthday for defendant that appears on the commitment of the instant offense. Therefore, based on the unobjected evidence and the evidence that was properly authenticated, we find that the trial judge did not err in finding defendant a multiple offender.
This assignment of error lacks merit.

*933 ASSIGNMENT OF ERROR NUMBER FIVE

The trial court erred in imposing an excessive sentence.

DISCUSSION
Defendant contends her sentence as a second felony offender is constitutionally excessive because twenty-five years of imprisonment is grossly disproportionate for hiding two bags of money in a police car. The State responds that the record supports the sentence imposed.
The Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243.
As a second felony offender, defendant was subject to a sentence of imprisonment between ten and forty years at hard labor without benefit of probation or suspension of sentence. LSA-R.S. 14:103.1(B)(2); 15:529.1(A)(1)(a) and (G). After she was found to be a second felony offender and the trial judge vacated the original sentence, the judge sentenced defendant to twenty-five years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[4]
After sentencing, defendant filed a timely motion for reconsideration asserting her sentence was excessive because she was not alleged to have committed any acts of physical violence on the victim and because defendant was cooperative with the police. The trial judge denied the motion. On appeal, defendant's chief complaint is that the trial judge failed to provide any reasons when imposing the multiple offender sentence. Although the trial judge did not provide any reasons at the multiple offender sentencing, the trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pendelton, supra; LSA C.Cr.P. art. 881.4(D). See, State v. Fairley, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 817, upholding a sentence even though the trial court failed to state any reasons for the sentence imposed where the record supported the sentence.
We find that the record supports the imposed sentence. In this case, two guns were recovered from a purse containing documents bearing defendant's name. One of the guns was identified as the gun that belonged to Mr. Bean, the victim of the armed robbery at Albertson's. Although defendant may have initially cooperated with the police, the record reflects that defendant ultimately placed the money that was taken in the armed robbery in Deputy Coussou's police car. Further, the record reflects that defendant claimed an interest in the money, since she told the women in the holding cell that the money was "our money," referring to herself and the driver of the Lincoln.
Additionally, prior criminal activity is one of the factors to be considered by *934 the trial judge in sentencing a defendant. Prior criminal activity is not limited to convictions. State v. Washington, 414 So.2d 313, 315 (La.1982); State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219. Records introduced at the multiple offender hearing reflected defendant had an Ohio conviction in which she shot a person with a handgun.
The Louisiana Supreme Court has stated that the question presented when reviewing a defendant's sentence is not "whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion." State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131, 1133. Under all of the circumstances in this case, it does not appear that the trial judge abused his sentencing discretion by imposing a sentence that was approximately one-half the maximum term of imprisonment.
This assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One error requires corrective action.
As noted by the State in its error patent review, the trial court imposed an illegal sentence because it denied parole eligibility when LSA-R.S. 14:130.1 does not permit a trial judge to impose a sentence for obstruction of justice without benefit of parole and LSA-R.S. 15:529.1 and does not permit the trial court to deny parole eligibility to a second felony offender. Accordingly, we hereby amend the defendant's sentence to delete the restriction on parole eligibility and we order the trial court to correct the commitment accordingly. See, State v. Watts, 98-2594 (La.1/29/99), 736 So.2d 821.
CONVICTION AFFIRMED; SENTENCE AMENDED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] The State asserts in its brief that Detective Decker drove Mr. Bean to the scene and that he made an identification of the person wearing the coveralls. However, Detective Decker's testimony is not clear as to whether Mr. Bean identified the person or the clothing.
[2] A felony in Louisiana is any crime for which the offender may be sentenced to death or imprisonment at hard labor. LSA-R.S. 14:2(4). Aggravated battery is a felony because an offender may be imprisoned at hard labor. See, LSA-R.S. 14:34.
[3] Other methods of authenticating public documents and records of other states are provided by 28 U.S.C. § 1738 and 28 U.S.C. § 1739. See, State v. Bernard, supra. However, neither exhibit complies with either of these federal statutes.
[4] As pointed out by the State's brief, defendant's sentence is illegal, since neither the reference statute nor the habitual offender statute allows for the denial of parole eligibility.