FREDERICKA HOMBERG WICKER, Judge.
12Defendant, Troy Crawford, appeals his conviction for aggravated second degree battery as well as his multiple offender adjudication and enhanced twenty-year sentence. Defendant’s appointed counsel has filed an appellate brief pursuant to Anders v. California,[1] and has further filed *1012 a motion to withdraw as counsel of record. Defendant has filed a supplemental pro se brief, which this Court finds does not raise any non-frivolous issues for appeal. For the following reasons, we affirm defendant’s conviction and sentence and grant appellate counsel’s motion to withdraw.

.¡¿STATEMENT OF THE CASE

On February 22, 2013, the Jefferson Parish District Attorney filed a bill of information charging defendant, Troy S. Crawford, with “second degree battery, with a dangerous weapon” upon Allen Blair in violation of La. R.S. 14:34.7. Defendant was arraigned and pled not guilty. On November 6, 2013, defendant proceeded to trial and, on that date, a six-person jury found defendant guilty of aggravated second degree battery in violation of La. R.S. 14:34.7. Defendant filed a motion for new trial, which was denied. After waiving sentencing delays, defendant was sentenced to fifteen years at hard labor.[2]
On January 7, 2014, the state filed a multiple offender bill of information alleging that defendant was a fourth felony offender. After defendant stipulated to being a fourth felony offender, the trial court vacated defendant’s original sentence and immediately resentenced him to twenty years imprisonment at hard labor without benefit of probation or suspension of sentence. This timely appeal follows.

FACTS

On January 21, 2013, the victim in this case, Allen Blair, went to Diva’s Lounge in Marrero following a Martin Luther King Day parade. Mr. Blair testified at trial that, while inside the bar, defendant approached him from behind and grabbed his buttocks. Mr. Blair turned around and confronted defendant, who then walked away towards the pool table. Mr. Blair stated that he walked towards defendant and began arguing with him, asking, “[m]an, what’s wrong with you?” According to Mr. Blair, defendant attempted to hit him with a pool stick, which they fought over.
_JjMr. Blair testified that he overpowered and struck defendant with the pool stick. Thereafter, defendant ran out of the bar. Mr. Blair stated that approximately fifteen to thirty minutes later, he walked out of the bar along with the bar owner when he saw defendant come towards him with a beer bottle. Mr. Blair explained that he tried to protect himself but that the bottle broke on his raised arm and defendant then struck him in the neck with the tip of the bottle. According to Mr. Blair, the fight ended when bystanders pulled him off of defendant. The bystanders removed Mr. Blair’s shirt and wrapped it around his neck. Mr. Blair explained that blood was “gushing” from his neck and blood was “everywhere.” Mr. Blair was brought to the hospital, where he received stitches from a plastic surgeon. Mr. Blair testified that the surgeon was only able to remove some of the glass from the wound on his face and that he was still removing glass from his face at the time of trial. He further testified that he had scars from the incident and that defendant cut off a portion of his ear.
Loretta Joseph, owner of Diva’s Lounge, testified that there was a verbal altercation inside of her bar in the late afternoon of January 21, 2013, following the Martin Luther King Day parade, after one customer accused another customer of touching him on his “backside.” Other customers intervened before a physical altercation began inside the bar and Ms. Joseph asked the customer that appeared to have started the argument to leave the bar. Approximately fifteen minutes later, she escorted Mr. Blair out of the bar with another customer. According to Ms. Joseph, de *1013 fendant unexpectedly stabbed Mr. Blair in the neck with a broken beer bottle. Ms. Joseph testified that a “tussle” began and that the fight ended when other people attempted to stop the fight. Ms. Joseph stated that the person who stabbed Mr. Blair then walked away.
1 ¡¡Deputy Bruce Verrette of the Jefferson Parish Sheriffs Office testified that he was the first officer on the scene at Diva’s Lounge. Deputy Verrette observed Mr. Blair sitting outside of the lounge, bleeding profusely from his neck. He applied direct pressure to Mr. Blair’s wound to slow down the bleeding until paramedics arrived. Deputy Verrette described the wound as a deep gash to the victim’s neck, with a piece of flesh peeling off. Deputy Verrette also observed that the lower part of Mr. Blair’s ear was missing.
Deputy Alvin Farris Jr., a patrol officer with the Jefferson Parish Sheriffs Office, testified that he responded to a dispatch that a suspect in a stabbing had fled towards Johnny Jacobs Playground in Mar-rero.[3] Deputy Farris drove to the location and observed defendant, who matched the description of the suspect, running through a field. Deputy Farris then exited his patrol vehicle and apprehended defendant. He testified that defendant had blood splatter on his face and a strong odor of alcohol. Deputy Farris further testified that he did not observe any injuries on defendant and that defendant did not complain to him of any injuries.[4] Deputy Far-ris acknowledged that defendant complied with his commands to stop, did not resist, and surrendered.
After learning that a suspect was in custody, Deputy Chris Vado of the Jefferson Parish Sheriffs Office, who was at the scene of the crime to conduct crowd control, transported two witnesses in his police vehicle to where the suspect was located in order to perform a “show up identification.”[5] Deputy Vado testified |fithat the two witnesses, Mr. Blair and Ms. Joseph, positively identified defendant as the person who stabbed Mr. Blair.
Defendant testified to a different version of events than the state’s witnesses. Defendant testified that he came to New Orleans from Philadelphia to visit his mother, who had been diagnosed with cancer. On the date of the incident at issue, defendant attended a doctor’s appointment with his mother and then viewed the Martin Luther King Day parade. Following the parade, defendant went to Diva’s Lounge where he ordered a drink and then placed his quarters on the pool table to wait for his turn to play pool.
According to defendant, an altercation ensued while he was waiting for his turn to “shoot” pool. He stated that he walked over to the bar to purchase a beer and that *1014 Mr. Blair, who he had never seen before, approached him. Defendant stated that, as he was about to play pool, Mr. Blair mumbled something and then simply attacked him. Defendant explained that Mr. Blair grabbed the pool stick, hit him over the head with it, and then began “pounding on” him. He asserted that more than one person kicked, beat, and punched him while he was on the ground. Defendant further claimed that after Mr. Blair struck him in the head with the pool stick, he was in and out of consciousness and was unaware of what occurred.
Defendant asserted that he did not fight back during the attack and did not recall seeing Mr. Blair’s injuries. Defendant stated that after the attack, someone lifted him from the floor and he ran out of the door and through the park. Defendant explained that there were people running after him and that he was afraid that someone was going to shoot him.
On cross-examination, defendant testified that he only consumed two alcoholic drinks on the date of the incident and that the officer smelled the odor of 17alcohol on him because he had been fighting in a bar. He also explained that there were no marks on him because of his dark complexion and also because of his sweater and heavy clothing. Defendant stated that, although his booking photograph does not appear to reflect any injuries, he claimed that he did in fact sustain injuries to the back of his head and the side of his face. Defendant testified that he refused to sign the pre-booking form because he was refused medical treatment for his injuries sustained when Mr. Blair attacked him. Defendant further testified that he did not cause the injuries to Mr. Blair’s neck.

DISCUSSION

In this appeal, we first address the merits of defendant’s pro se brief. Thereafter, we consider appellate counsel’s Anders brief and his motion to withdraw as counsel. For the following reasons, we find that this appeal does not raise any non-frivolous issues for appeal. We therefore affirm defendant’s conviction and sentence and grant appellate counsel’s motion to withdraw.

Pro Se Supplemental Brief

In his pro se supplemental brief, defendant challenges the sufficiency of the evidence against him, claiming that the state failed to prove each element of the offense of aggravated second degree battery and further claiming that the state failed to disprove defendant’s self-defense theory. Defendant further complains that the prosecutor’s closing arguments at trial, wherein the prosecutor referred to defendant as “the aggressor,” improperly influenced the jury and contributed to the verdict.

Sufficiency of the Evidence

In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the | scrime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record, and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
*1015 In this case, defendant was convicted of aggravated second degree battery. La. R.S. 14:34.7(A) defines aggravated second degree battery as “a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury.” Aggravated second degree battery is a crime requiring specific criminal intent. See State v. Fuller, 414 So.2d 306 (La. 1982). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances and by the actions of the defendant. Id.
In the present case, we find that the state presented sufficient evidence to support defendant’s conviction of aggravated second degree battery. Two witnesses, Mr. Blair and Ms. Joseph, identified defendant — immediately following the crime as well as at trial — as the individual who stabbed Mr. Blair in the neck with a broken glass beer bottle. Positive identification by only one witness is Insufficient to support a conviction. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
Further, we find that the state presented sufficient evidence of the victim’s serious bodily injuries, including testimony as well as photographs depicting a deep gash in Mr. Blair’s neck, with peeled off skin, and a missing portion of his ear. Therefore, in reviewing the evidence in the light most favorable to the prosecution, a rational juror could reasonably find that defendant intentionally inflicted serious bodily injury upon Allen Blair with a dangerous weapon. This assignment is without merit.
Regarding defendant’s argument that the state failed to disprove that he acted in self-defense, we further find that argument to be without merit. This Court has previously found that “the defendant, in a non-homicide case, has the burden to establish, by a preponderance of the evidence, that he acted in self-defense.” State v. Strickland, 11-715 (La.App. 5 Cir. 3/27/12), 91 So.3d 411, 416 (citing Steele, infra). The fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. Strickland, supra, citing La. R.S. 14:18; State v. Patterson, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 148, writ denied, 11-0338 (La.6/17/11), 63 So.3d 1037.
The use of force or violence is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person’s lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. Strickland, supra (citing La. R.S. 14:19(A); State v. Steele, 01-1414 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 547, writ denied, 02-2992 (La.9/19/03), 853 So.2d 632). An aggressor, however, generally cannot claim self-defense, unless he |inwithdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La.R.S.14:21.
In his supplemental pro se brief to this Court, defendant argues that the state failed to disprove his theory of self-defense. Defendant points to inconsistencies in the state’s witnesses’ testimony and challenges the witnesses’ credibility. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Further, the credibility of the witnesses will not be reweighed on appeal. See State v. Rowan, *1016 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.[6]
In the present case, defendant and the victim, Mr. Blair, offered conflicting versions of events leading up to the crime. The jury apparently chose to believe Mr. Blair’s version of events. Mr. Blair and Ms. Joseph both testified that defendant left the bar at least fifteen minutes before Mr. Blair. They both further testified that defendant attacked Mr. Blair with a broken glass beer bottle, without warning, after he exited the bar.[7] The record further reflects that the jury was instructed on self-défense and apparently found that defendant failed to meet his burden to prove same. In light of the evidence presented, we find that the jury could have reasonably rejected defendant’s theory of self-defense. This argument is without merit.

Improper Closing Argument

In his pro se supplemental brief, defendant further asserts that the prosecutor made improper remarks during closing argument by referring to the defendant as “the aggressor.” First,, we find that defense counsel failed to object to the prosecutor’s remarks at trial. Generally, an irregularity or error cannot be complained of after a verdict unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841(A). The purpose of the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict, and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1054, writs denied, 00-0150 (La.6/30/00), 765 So.2d 1066 and 99-3477 (La.6/30/00), 765 So.2d 1062.
However, there are jurisprudential exceptions to the contemporaneous objection rule that allow statements made during a prosecutor’s closing argument to be considered on appeal despite the absence of an objection at trial. The standard for consideration is whether the remarks were so extremely inflammatory and prejudicial that allowing the verdict to stand would seriously affect the fairness, integrity or public reputation of judicial proceedings. Hotoph, 750 So.2d at 1054. However, a conviction will not be reversed due to improper remarks during closing arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Greenup, 12-881 (La.App. 5 Cir. 8/27/13), 123 So.3d 768, 775-76; State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 927, writs denied, 04-1640 (La.11/19/04), 888 So.2d 192 and 08-2370 (La.1/30/09), 999 So.2d 753. In making this determination, the appellate *1017 court should give credit to the good sense and fairjmindedness12 of the jury that has seen the evidence, heard the argument, and has been instructed that the arguments of counsel are not evidence. Uloho, 875 So.2d at 928.
In this case, the prosecutor’s remarks— that defendant acted as “the aggressor”— occurred during the state’s rebuttal argument. La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant. (Emphasis added).
Upon our review of the transcript of closing arguments at trial, we find that the prosecutor does not mention the term “aggressor” in his initial closing argument. Rather, the prosecutor’s remarks, implying that defendant was the aggressor, were made only in rebuttal to the defense’s closing argument, wherein defense counsel indicated that Mr. Blair was actually “the aggressor” in the altercation. Accordingly, we find the prosecutor’s remarks in this case were in response to the defendant’s closing argument and were therefore within the scope of rebuttal argument and not improper. Moreover, the record reflects that the jury was instructed on the aggressor doctrine, as well as instructed that the arguments of counsel are not evidence to be considered in rendering a verdict. This argument lacks merit.

Anders Brief

Under the procedure set forth in State v. Benjamin, 573 So.2d 528, 530 (La.App. 4 Cir.1990), defendant’s appointed appellate counsel has filed an Anders brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, 242 (per curiam), asserting that he has thoroughly reviewed the trial court record and could find no non-frivolous issues to raise on appeal. Accordingly, appointed counsel requests to withdraw as counsel of record.
In Anders, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds the case to be wholly frivolous after a conscientious examination of it. In State v. Jyles, the Louisiana Supreme Court explained that an Anders brief must demonstrate by full discussion and analysis that appellate counsel “has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.” Jyles, 704 So.2d at 241. An appellate court must conduct an independent review of the trial court record to determine whether the appeal is wholly frivolous. “When counsel files an Anders brief, an appellate court reviews several items: a) the Bill of Information to ensure that the charge is proper, b) all minute entries to ensure that defendant was present at all crucial stages of the prosecution, c) all pleadings in the record, and d) all transcripts to determine whether any ruling of the trial court provides a basis for appeal.” State v. Dufrene, 07-823 (La.App. 5 Cir. 2/19/08), 980 So.2d 31, 33. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal *1018 point(s) identified by the court, or grant the motion and appoint substitute appellate counsel. Id.
In this case, appointed appellate counsel’s brief demonstrates that after a detailed review of the record, counsel could find no non-frivolous issues to raise on J^appeal. The state agrees and urges this Court to grant defense counsel’s request to withdraw as counsel of record. An independent review of the record supports counsel’s assertion that there are no non-frivolous issues to raise on appeal.
First, the bill of information properly sets forth the offense charged and presents no non-frivolous issues for appeal. The bill of information plainly, concisely, and definitely states the essential facts constituting the offense -charged as well as sufficiently identifies defendant. See also generally La.C.Cr.P. arts. 464-466.
Although the bill of information properly listed the statutory citation for aggravated second degree battery as La. R.S. 14:34.7, the bill of information listed the charged offense as “second degree battery, with a dangerous weapon” instead of “aggravated second degree battery.” La.C.Cr.P. art. 464 provides that, “[t]he indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.” Further, a post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. State v. Noil, 01-521 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 309.
In this case, the record reflects that the bill of information properly identified defendant and informed him of the essential facts constituting the offense charged as well as the proper statute citation for aggravated second degree battery, La. R.S. 14:34.7. Thus, we find that the bill of information properly charged defendant, and 11sany technical error in the bill of information did not mislead defendant to his prejudice.
Second, the record reflects that defendant appeared at each stage of the proceedings against him, including his arraignment, his trial and verdict, his original sentencing, his multiple offender proceedings, and his enhanced sentencing.
Further, neither defendant’s original sentence nor his enhanced sentence as a multiple offender presents any issues for appeal. Defendant’s original fifteen-year sentence, although the maximum sentence allowed under the law, was within the sentencing range prescribed by statute. See La. R.S. 14:34.7. Further, defendant’s original sentence does not appear excessive and the record appears to support the original sentence received. Nevertheless, defendant’s original sentence was later vacated, and defendant was resentenced as a multiple offender under La. R.S. 15:529.1.
Defendant stipulated to the multiple bill, which alleged that he was a fourth felony offender. Prior to stipulating to the multiple bill, defendant was informed of his right to appointment of counsel to represent him, the sentencing range, and the allegations contained in the multiple offender bill of information. Defendant was also informed that by stipulating to the allegations, he waived his right to a hearing, where the district attorney would have to prove that prior to defendant entering his previous guilty pleas that he was advised of his right to a trial by jury, to *1019 confront and cross-examine witnesses, and to remain silent. Further, defendant was informed of his right to remain silent at the multiple offender hearing.
Defendant received an enhanced sentence of twenty years imprisonment without benefit of probation or suspension of sentence, which falls within the sentencing range prescribed by statute. See La. R.S. 14:34.7 and La. R.S. 15:529.1. Nevertheless, appellate review of defendant’s enhanced sentence is precluded because it was imposed pursuant to a plea agreement. See La.C.Cr.P. art. 881.2(A)(2); State v. Washington, 05-211 (La.App. 5 Cir. 10/6/05), 916 So.2d 1171, 1173. If a defendant pleads guilty, he normally waives all non-jurisdietional defects in the proceedings leading up to the guilty plea, which precludes review of such defects either by appeal or post-conviction relief. State v. Wingerter, 05-697 (La.App. 5 Cir. 3/14/06), 926 So.2d 662, 664. Moreover, a stipulation to a multiple bill bars a defendant from asserting on appeal that the State failed to produce sufficient proof at the multiple bill hearing. See State v. Schaefer, 97-465 (La.App. 5 Cir. 11/25/97), 704 So.2d 300, 304.
Finally, upon review of the record, we find the proceedings surrounding defendant’s trial and original sentence, as well as his multiple offender proceedings and enhanced sentencing, do not present any non-frivolous issues to be raised on appeal. We further find appellate counsel’s brief adequately demonstrates by full discussion and analysis that he has reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal, and an independent review of the record supports counsel’s assertion.

CONCLUSION

Accordingly, for the reasons provided herein, defendant’s conviction and sentence are affirmed and appellate counsel’s motion to withdraw as attorney of record is hereby granted.

CONVICTION AND SENTENCE AFFIRMED; MOTION TO WITHDRAW GRANTED.

. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. Defendant filed a motion to reconsider sen-fence, which the trial court denied.

. The audio disks of the 9-1-1 calls received were introduced into evidence at trial.

. Lieutenant David Biewer, a shift supervisor for the Jefferson Parish Correctional Center, testified on behalf of the state regarding the correctional center’s general booking procedures. According to Lieutenant Biewer, an arrestee is asked at the time of booking whether he is hurt or injured. He testified that if the arrestee complains of even a minor injury, he is taken to the medical staff for observation. Defendant was not transported to medical care in this case. On cross-examination, Lieutenant Biewer admitted that defendant refused to sign the pre-booking form that indicated defendant was not injured.

.Deputy Vado explained that defendant was in handcuffs and standing next to Deputy Farris outside of his marked police vehicle as he drove by to allow the witnesses to identify the suspect. Generally, one-on-one identifications are not favored; however, when the accused is apprehended within a relatively short period of time after the occurrence of the crime, such identifications may be justified. See State v. Benoit, 07-35 (La.App. 5 Cir. 5/29/07), 960 So.2d 279, 282.

. Defendant also asserts that Mr. Blair provided false testimony concerning his prior criminal history. At trial, Mr. Blair testified that he had never been convicted of a crime. In his supplemental pro se brief, defendant attaches a criminal history report for Mr. Blair that he contends reflects that Mr. Blair does in fact have a criminal history. First, we find that this issue was not raised in the trial court and we are thus precluded from reviewing same on appeal. See Uniform Rules, Courts of Appeal, Rule 1-3. Further, the documents attached to defendant’s pro se brief were never introduced at trial and thus cannot be considered by this Court. Documents not properly placed in evidence cannot be considered on appeal and appellate courts have no jurisdiction to receive new evidence. State v. Wuneburger, 03-490 (La.App. 5 Cir. 10/15/03), 860 So.2d 78, 83.

. Defendant also complains that the investigating officers did not conduct a complete, investigation of the crime scene because they failed to investigate the interior of Diva's Lounge. Based upon the record before us, the information provided to investigating officers at the time of the investigation reflected that the crime occurred outside of the bar.