ROBERT M. MURPHY, Judge.
2Pefendant, Tremika D. Lang, appeals her conviction and sentence for conspiracy to commit second degree murder, a violation of La. R.S. 14:26:30.1.[1] For the reasons that follow, the Court affirms defendant’s conviction and remands for correction of sentence.

FACTS AND PROCEDURAL HISTORY

In July 2009, defendant sought to purchase a car at auction; she gave Marvin Hudson $7,200.00 without obtaining a receipt or any documentation. Unable to reach Marvin Hudson after he failed to deliver a car, defendant called and sent text messages to Marvin Hudson’s girlfriend Rose Grace to find Hudson. Defendant sought the promised car or the return of her money. Defendant also went in person to Grace’s home looking for Marvin Hudson. Defendant further exchanged text messages with her then boyfriend Kendrick Henry. These messages conveyed ^defendant’s desire for revenge against Hudson for his failure to deliver the vehicle or return her money.
On July 29, 2009, two male gunmen opened fire at 3601 Tulane Drive in Ken-ner, Louisiana, the residence of Marvin *332 Hudson and Rose Grace. Marvin Hudson’s brother, Jonathan Hudson, was killed, and Michael Cauley was injured. Marvin Hudson was uninjured, and the gunmen remain unidentified.
On November 24, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, with conspiracy to commit second degree murder in violation of La. R.S. 14:26 and R.S. 14:30.1 between July 25, 2009 and July 29, 2009.[2] Defendant was arraigned the next day and pled not guilty. On January 25, 2011, the State amended the bill of information to change the ending date of the conspiracy to October 9, 2009. On January 4, 5, and 6, 2012, the case was tried before a 12-person jury that found defendant guilty as charged.
Defendant filed a Motion for New Trial and Alternatively to Arrest the Judgment that was denied on March 28, 2012. On that same date, after waiving sentencing delays, the trial judge sentenced defendant to imprisonment at hard labor for 17 years. Defendant filed a Motion to Reconsider Sentence that was denied. Also on March 28, 2012, defendant filed a timely Motion for Appeal that was granted.
On April 2, 2012, the trial judge amended the sentence to reflect that it was to be served without benefit of parole, probation, or suspension of sentence. On August 7, 2012, defendant filed a Motion for Clarification of Sentence that was granted. In her ruling on that motion, the trial judge recommended that defendant 14be allowed to participate in all substance abuse and rehabilitative programs available while incarcerated.

LAWAND DISCUSSION

Sufficiency of the evidence.' Defendant argues in her first assignment of error that the evidence was insufficient to support the jury’s verdict. She contends that the only evidence against her was unrelated text messages containing her angry thoughts that were never intended to be acted upon or seen by anyone other than her and her boyfriend, Kendrick Henry. Defendant further contends that none of what she and Henry texted ever came to pass, as Marvin Hudson was not killed or 2tortured, his car was not stolen, his home was not robbed or burned, and no phones were taken. She asserts that she and Henry were simply “trash talking,” that no action was ever taken, and that no plan was ever enacted.
The State responds that a rational fact finder, viewing the facts in the light most favorable to the prosecution, could have found that defendant had the specific intent to kill, and that defendant and Henry were in agreement in their desire to kill Marvin Hudson. The State further responds that defendant’s attempts to physically locate Marvin Hudson were acts done in furtherance of their agreement. The State also asserts that defendant’s consciousness of guilt was evidenced by her sudden flight to Atlanta shortly after the murder, her instructions to friends not to talk to the police about a murder, her lies to the police as to her whereabouts and knowledge of the offense, and her alteration of the appearance of her vehicle after the murder.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecu *333 tion, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond 15a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
Defendant was charged with and convicted of conspiracy to commit second degree murder in violation of La. R.S. 14:26 and 14:30.1. Second degree murder is defined, in pertinent part, by La. R.S. 14:30.1 as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Criminal conspiracy is defined by La. R.S. 14:26(A) as:
[T]he agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
Thus, the elements of the crime of conspiracy are: (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. State v. Tatum, 09-1004, p. 11 (La.App. 5 Cir. 5/25/10), 40 So.3d 1082, 1089.
|fiThe first element of a criminal conspiracy, specific intent, is defined as the “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La.C.Cr.P. art. 14:10(1); State v. Zeno, 99-69, p. 6 (La.App. 5 Cir. 8/31/99), 742 So.2d 699, 704, writ denied, 00-105 (La.6/30/00), 765 So.2d 1065. The determination of specific criminal intent is a question of fact and may be inferred from circumstances and actions of the defendant. Id. Proof of a conspiracy may be made by direct or circumstantial evidence. Id., 99-69 at 7, 742 So.2d at 705.
The second element of a criminal conspiracy, the overt act, need not be unlawful. It may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of its object. State v. Jackson, 00-221 (La.App. 5 Cir. 3/15/01), 783 So.2d 482, 487, writs denied, 01-1071 (La.5/9/03), 843 So.2d 385, and 01-1258 (La.5/9/03), 843 So.2d 386. In prosecutions for criminal conspiracy, whether an overt act allegedly served to support the object of the conspiracy is a question for the jury. State v. Ellis, 94-599, p. 41 (La.App. 5 Cir. 5/30/95), 657 So.2d 341, writs denied, 95-2095 (La.12/8/95), 664 So.2d 421, and 95-1639 (La.1/5/96), 666 So.2d 300.
In the earlier trial against Henry, the State presented much of the same evidence that it presented in the instant case. State v. Henry, 12-545, (La.App. 5 Cir. *334 5/30/13), 119 So.3d 713. Upon review, this Court concluded that the evidence was sufficient to show that Henry conspired to commit second degree murder, as the evidence showed Henry and Lang planned to kill Marvin Hudson, or have someone else kill him, and then carried out acts in furtherance of that plan by text messaging and searching for Marvin Hudson. Id., 12-545 at 11-12,119 So.3d 713.
|7In the instant case, Sergeant Brian McGregor of the Kenner Police Department testified at trial that he sought and obtained cell phone information, including numerous text messages, for defendant Lang, Kendrick Henry, Rose Grace, and other individuals, including Arzia Harris (a suspect), and someone referred to as “Reginald.” The text messages showed that in the days leading up to the July 29, 2009 murder, defendant and Henry became increasingly angry at Marvin Hudson for his failure to return defendant’s money or give her the car she paid for. The text messages further showed that defendant and Henry discussed a plan to locate, shoot, and kill Marvin Hudson. A sampling of the text messages are as follows:
On July 26, 2009, at 12:21 p.m., Henry sent defendant a text saying, “He Gon [sic] Die.” Defendant sent Henry a text on that same date at 12:24 p.m. stating, “I never ahot [sic] nobody or attended on doing it, but I will and I promise.” At 12:28 p.m., Henry sent defendant a text asserting, “he gon [sic] die,” and “he gon [sic] get tortured.” Defendant texted Henry at 12:32 p.m. saying, “I never thought I will be like dis [sic], but I’m ready to my [sic] kill something, really.”
On July 27, 2009, at 6:26 a.m., defendant sent Rose Grace a text telling her to make her “man” give her her money or the car and that she did not want to “take it to another level.” Henry then sent defendant a text on that same date at 7:17 a.m. stating, “After 2day or tomorrow I’m going kill [sic] him.” Seconds later, defendant texted Henry, “Okay. Kool [sic].” On July 27, 2009 at 11:10 a.m., Henry texted defendant, “Set it off Set if [sic] off 50 Shots gon [sic] set it off!” At 11:28 a.m., defendant sent Henry a text asking how they were going to get him, and Henry responded for her to please call. At 12:21 p.m., defendant texted Henry that if nothing happened by Thursday, “then he get popped [sic].” Defendant sent |sHenry a text at 2:01 p.m. indicating that she had gone by Marvin Hudson’s house the day before looking for him. (It is noted that Rose Grace testified that defendant came to her door twice on the Saturday before the murder and asked if Marvin Hudson was home.) Also on July 27, 2009, at 10:39 p.m., defendant texted Grace that she needed the money or the car from Marvin Hudson.
On July 28, 2009, at 7:37 a.m., defendant sent Henry a text asking if he and “Aaron” were going to look for “him” that day or if they were going to get some information that would lead to “him.” At 3:22 p.m. that day, defendant texted Henry that “Aaron” had been looking for “him” all day. At 3:46 p.m., defendant sent Henry a text that she wanted her money and she wanted to kill “him.” Henry texted defendant at 3:50 p.m. stating, “Chill if we find em we find em but we will kill him. U r lookn at a <& of getn ur money back. He gon meet up wit me 2 search [sic].”
Also on July 28, 2009, at 4:02 p.m., Henry texted “Reginald,” saying, “Tel ba 2 give u my grinda because I need 2 take off a serial numba of a k.” At 9:03 p.m., defendant texted Henry telling him to “get him” and “get something.” At 9:06 p.m., Henry sent defendant a text stating, “Dey gon get bullets [sic],” and defendant responded a minute later saying, “Kool [sic].” Defendant texted Henry at 9:09 p.m. telling him *335 to “jack they sh*t [sic] afterwards,” and to search the house and throw away their phones. At 9:10 p.m., defendant sent Henry a text stating, “Then give anthony and eric something, maybe — alero, lol. Anyway, give em something from being down [sic]....” It is noted that defendant drove an Alero vehicle.
On July 29, 2009, the day of the murder, Henry sent an unknown cell phone number a text at 9:39 a.m. saying, “Its kool though! I hope he buying sum caskets! Lol 4 real though [sic].” On that same date at 11:12 a.m., defendant sent Henry a 19text telling him that, “They gotta up they vehicles and they life [sic], I’m sorry,” and “we have to make sure they don’t move, basically just pass to see if they still living there. Nobody ain’t ruining my plans [sic].... ” At 11:27 a.m., defendant texted Henry that she got somebody to call Rose and “he” answered. At 11:38 a.m., defendant texted Henry stating that her partner had pretended like he was a doctor and wanted tomeet with “him” and “he” fell for it. At 4:55 p.m., defendant sent a text to Henry saying, “Dats my last text to him [sic].” “Reginald” subsequently sent Henry a text at 10:04 p.m. stating, “F* *k that I cutt that hoe la la that b*tch.” At 10:11 p.m., at approximately the time of the murder, “Reginald” sent a text to Henry stating, “Come get me lil round.”
On July 30, 2009, additional text messages were sent amongst the parties indicating that defendant and Henry were trying to leave town, that people were looking for them, and that they had to go. On July 31, 2009, Sergeant Michael Cunningham of the Kenner Police Department spoke to defendant on the phone, and defendant told him she could not meet him because she was at her mother’s house in New Orleans. A short time later, Henry called Sergeant Cunningham. Henry told him that he and defendant were on the interstate almost to Atlanta and that they had to leave because they felt their lives were in danger. Henry told Sergeant Cunningham that somebody was looking for the girl who drove a white car with a butterfly sticker on the back, and that defendant had such a car.
Ashley Holmes, defendant’s friend, testified that defendant called her the morning after the murder and told her to tell anyone that called that she (Holmes) did not know anything. Donyelle Bickham, defendant’s friend, testified that she called defendant and asked why a detective called her, and defendant told her to tell them she knew nothing about a murder. Bick-ham further testified that she and defendant worked together, and that defendant never talked to her about moving.
ImSergeant Cunningham and other officers eventually located defendant in Baton Rouge on August 19, 2009, and brought her back to Kenner for questioning. They later arrested defendant and Henry for conspiracy to commit second degree murder. The police took photographs of defendant’s vehicle (after the murder), and it did not have a butterfly on it at that time. After defendant was arrested, Henry told Sergeant Cunningham that he had reported his car stolen on September 25, 2009, and that there was an AK-47 in the ear at that time. Sergeant Cunningham testified that he had told Henry that the murder was committed with an AK-47. Sergeant McGregor testified that he did not develop any information that suggested anyone other than defendant or Henry had a motive to kill anyone outside of 3601 Tulane at the time of the shooting.
We find the text messages between defendant and Henry showed that there was an agreement between them to carry out the plan of killing Marvin Hudson. Additionally, the evidence further showed that defendant and Henry completed acts and *336 made these statements in furtherance of this agreement. The text messages reflected that defendant and Henry actively searched, or had others search, for Marvin Hudson in order to carry out their plan to shoot him. Additionally, Rose Grace testified that defendant went to her house twice the day before the murder looking for Marvin Hudson. Moreover, the evidence showed that shortly after the murder, defendant left town, altered the appearance of her vehicle, and lied to the police about her whereabouts.
Evidence of flight, concealment, and attempt to avoid apprehension is relevant and admissible to prove consciousness of guilt from which the trier-of-fact may infer guilt. State v. Bellow, 08-259, p. 16 (La.App. 5 Cir. 7/29/08), 993 So.2d 307, 316, writ denied, 08-2109 (La.4/13/09), 5 So.3d 162.
|nIn light of the foregoing, we find that a rational trier-of-fact could have found that the evidence was sufficient under the Jackson standard to support defendant’s conviction of conspiracy to commit second degree murder. This first assignment of error lacks merit.
Motion to exclude. In her second assignment of error, defendant contends the trial court erred in denying the defense’s motion to exclude certain evidence under the Confrontation Clause. Defendant argues that her right to confront her accusers was violated when texts from and between Kendrick Henry, “Reginald,” and Arzia Harris were admitted into evidence at trial, even though those individuals, and others mentioned in the texts, did not testify at trial. Defendant contends that she was not able to cross-examine Henry or any of the others as to what the texts actually meant.
The State responds that the Sixth Amendment was not violated by the admission of the text messages into evidence because the text messages were not “testimonial” and therefore not subject to the Confrontation Clause. The State further responds that the text messages were admissible under La. C.E. art. 801(D)(3)(b)[3] because they were made by participants in a conspiracy and in furtherance of the objective of the conspiracy.
Defendant filed a motion in limine to exclude any text messages between defendant and Henry and between Henry and persons unknown. In that motion, defendant contended that she would not be able to cross-examine any witnesses as | 12to the context and/or meaning of those text messages. On the first day of trial, a hearing was held on defendant’s motion wherein defendant made the same argument she made in her written motion. The prosecutor responded that they had previously dealt with that identical issue during Henry’s trial, and that the statements in question were not hearsay because they were made by a declarant while participating in *337 a conspiracy to commit murder. Therefore, he argued that they would be admissible as non-hearsay statements under La. C.E. art. 801(D)(3)(b).
On January 4, 2012, after jury selection and prior to the Court’s preliminary instructions, the prosecutor noted that he was offering the entire record and all proceedings from the earlier case to prove up the prima facie case of conspiracy. They were admitted into evidence. On January 4, 2012, the trial judge denied the defendant’s motion in limine. The trial judge said however, that she would allow defendant to make the same argument if, at the time the text messages were offered into evidence, the defendant did not feel that the State had established a prima facie case. The prosecutor commented that it was not a jury question, but a question for the judge under La. C.E. art. 104(A).[4] The trial judge stated that the prosecutor had previously presented a prima facie case [in the Henry trial], but that if he did not present that same case, he would have to establish a conspiracy. At two points in the trial, the trial judge told defense counsel that, “I’ve denied your motion in li-mine,” and at a bench conference prior to opening statements, the trial judge informed counsel of her ruling again: “Just so you know, we had a hearing with— |regarding1s the text messages and the cell phones, back in May [2011], and in May, I admitted them into evidence.” This ruling preceded the August 23, 2011 severance of co-defendants Henry and Lang; the evidence considered pertained to both Henry and Lang.
Before resting, defense counsel urged the trial judge to grant the motion to exclude certain evidence again; however, defense counsel argued that it was premature because he had not stated whether he was going to call any witnesses. A short time later, defendant said he would not call any witnesses. Afterward, he asked if the trial judge wished to take up the matter concerning his “ongoing objection.” The record indicates that the “ongoing objection” referred to defendant’s motion to exclude certain evidence. On January 6, 2012, before closing arguments, the trial judge again denied defendant’s “objection” to the admission of the text messages and phone records.
Under La. C.E. art. 801(D)(3)(b), a statement is not hearsay if it is offered against a party and it is made by a declar-ant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established. In State v. Lobato, 603 So.2d 739, 747 (La.1992), the Louisiana Supreme Court explained that a prima fa-cie case of conspiracy is established when the State introduces evidence which, if un-rebutted, would be sufficient to establish the facts of the conspiracy. Id. Statements made by co-conspirators which are the object of a defendant’s hearsay objection may be considered by the trial court in making its determination as to whether *338 the State established a prima facie case of conspiracy. Id.
|14In State v. Freeman, 07-363, 2008 WL 2068072 (La.App. 1 Cir. 5/2/08), (unpublished opinion),[5] the defendant argued that the trial court erred in allowing the jury to hear audiotapes of her son arranging a drug deal with a-detective, as the statements of her son were inadmissible hearsay. She also contended that because her son was not available to testify, she was denied her right of cross-examination. The appellate court found that the son’s statements were part of the res gestae under La. C.E. art. 801D(4) and were therefore not hearsay. The appellate court further found that the son’s statements were made while participating in a conspiracy to commit a crime under La. C.E. art. 801(D)(3)(b) and therefore not hearsay. Lastly, the appellate court found that under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), since the son’s statements constituted out-of-court declarations of a co-conspirator made in the course and in furtherance of the conspiracy, the Confrontation Clause was not implicated, and the defendant’s right to confrontation was not violated. Freeman, 07-363, at *3-4.
In the instant case, we find that the trial court did not err in finding that the State established a prima facie case of conspiracy. As was discussed previously in defendant’s first assignment of error, the text messages between defendant and Henry showed that there was an agreement between them to carry out the plan of killing Marvin Hudson, and that defendant and Henry completed acts in furtherance of this agreement. Additionally, Rose Grace testified that defendant went to her house the day before the murder looking for Marvin Hudson, which also showed an act in furtherance of this agreement. Moreover, the evidence showed that shortly after the murder, defendant left town, altered the appearance of her vehicle, and lied to the police about her whereabouts.
1^Therefore, because the statements in the text messages were made by declar-ants while participating in a conspiracy to commit murder and in furtherance of the objective of the conspiracy, we find that the text messages were admissible under La. C.E. art. 801(D)(3)(b) and are therefore not hearsay.
We also find that defendant’s assertion that her right to confrontation was violated is without merit. The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront the witnesses against him. State v. Jackson, 03-883, p. 17 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118. In Crawford, supra, the Supreme Court restricted the admissibility of testimonial statements as evidence at a criminal trial in situations when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant.
The Crawford Court, however, determined that for a statement to be “testimonial,” the statement at a minimum must include: “prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and police interrogations.” State v. Leonard, 05-42, p. 19 (La.App. 5 Cir. 7/26/05), 910 So.2d 977, 989, writ denied, 06-2241 (La.6/1/07), 957 So.2d 165 *339 (citing Crawford, supra, 124 S.Ct. at 1374). The Crawford Court stated that “testimony” is “[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.” State v. Leonard, 05-42 at 19-20, 910 So.2d at 989 (citing Crawford, supra, 124 S.Ct. at 1364).
The Sixth Amendment bestows a right of confrontation to confront witnesses who “bear testimony” against him; according to the Supreme Court, an accuser making a formal statement to government officials bears testimony in a sense that a person making a casual remark to an acquaintance does not. Leonard, |lfi,supra. As examples of testimonial statements, the Crawford Court lists affidavits, custodial examinations, depositions, prior testimony, confessions, or similar pretrial statements that declarants would reasonably expect to be used in a prosecution. The Crawford Court also refers to statements as testimonial that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. State v. Leonard, 05-42 at 20, 910 So.2d at 989-90 (citing Crawford, supra, 124 S.Ct. at 1364).
No published Louisiana cases address the issue of whether text messages are testimonial or non-testimonial under Crawford. However, cases in other jurisdictions have addressed that issue and found that the text messages in those cases were non-testimonial. Louisiana cases have addressed the issue of non-testimonial communication being admissible.
In State v. Damper, 223 Ariz. 572, 225 P.3d 1148 (Ariz.Ct.App.2010), the Arizona appellate court concluded that because the content and circumstances of the text at issue demonstrated that the individual did not send it for the purpose of establishing or proving some fact, the message was non-testimonial. In Rodriguez v. State, 273 P.3d 845 (Nev.2012), Rodriguez suggested that the admission of the text messages raised a confrontation issue; however, the Nevada Supreme Court disagreed, finding that the text messages were neither hearsay nor testimonial.[6]
Similarly, this Court has found that statements to a friend or family member in a private conversation are non-testimonial under Crawford. In State v. Leonard, supra, the trial court permitted the murder victim’s girlfriend to testify that the victim told her he was going to Memphis with defendant to buy marijuana. This 117Court found that the victim’s statements to his girlfriend were non-testimonial, because the statements, which were made in a private conversation, did not come within the purview of any of the classes of testimonial statements mentioned in Crawford, and were not made under circumstances in which an objective person would reasonably think that the statements would be available for use at a later trial. Id., 05-42 at 21, 910 So.2d at 990.
Likewise, in State v. Parks, 08-423 (La.App. 5 Cir. 11/25/08), 2 So.3d 470, writ denied, 09-142 (La.10/2/09), 18 So.3d 101, this Court found that the admission of statements the murder victim made to her niece over the telephone on the night of her death were non-testimonial and did not violate the defendant’s right of confrontation. This Court found that the state *340 ments did not come within the purview of any of the classes of testimonial statements mentioned in Crawford. This Court noted that the victim was speaking to a friend, and not the police, and that the victim had no expectation that her statement would be of later use to help establish that defendant committed a crime, as she spoke informally and without coercion. Id., 08-423 at 16, 2 So.3d at 479. See also State v. Short, 06-1451, pp. 6-7 (La.App. 3 Cir. 5/16/07), 958 So.2d 93, 97, writ denied, 07-1646 (La.2/1/08), 976 So.2d 715 (statements made were non-testimonial and their admission did not violate the ruling in Crawford, citing State v. Miller, 95 Conn.App. 362, 896 A.2d 844 (2006), “the statements at issue are the sort of remarks to an acquaintance that the Crawford [Cjourt proclaimed to be non-testimonial,” and “[t]he courts of this land, both federal and state, are in agreement that statements made to friends in unofficial settings do not constitute testimonial hearsay.”)
In the instant case, we find that the text messages are not testimonial under Crawford and do not violate defendant’s right of confrontation. The statements contained within the text messages were made in casual, private conversations and 11sdid not come within the purview of any of the classes of testimonial statements mentioned in Crawford. Leonard, supra; Parks, supra. Additionally, defendant Lang, Henry, and the other participants, “Reginald” and Arzia Harris, had no expectation that their statements would be of later use to help establish that defendant committed a crime, as they spoke informally and without coercion. Id. The text messages of the co-conspirators, “Reginald” and Harris, are admissible as the other non-testifying co-conspirator, Henry. The trial court correctly concluded that a prima facie case of conspiracy was established, when she determined that the co-conspirators’ statements were made during the conspiracy and in furtherance thereof. See State v. Tsolainos, 2007-2443, p. 5 (La.App. 1 Cir. 10/10/08), 997 So.2d 46, 49, writ denied, 2008-2653 (La.10/9/09), 19 So.3d 6 (admission of recorded conversation between non-testifying co-conspirators and confidential informant was “non-testimonial” and did not violate Confrontation Clause).
In light of the foregoing, we find that the trial court did not err by admitting the text messages into evidence at trial first as a non-testimonial exception to the hearsay rule, and additionally as non-hearsay statements of co-conspirators. Defendant’s second assignment of error lacks merit.
Excessive sentence. In her third assignment of error, defendant contends that the trial court erred in imposing an excessive sentence. Defendant argues that her 17-year sentence is excessive, considering that it was Henry who had a murderous intent toward Marvin Hudson, and he received only a 13-year sentence. Defendant further argues that it was clear from the texts that she did not want this situation to escalate. She contends that she tried to diffuse it, but that Henry eventually wore her down. She also contends that the trial judge did not enumerate any mitigating factors and recited only boilerplate language that the La.C.Cr.P. art. 894.1 factors were considered and that any lesser sentence would deprecate the seriousness of h9the crimes. The State responds that the mid-range sentence is not excessive, noting that the plot to kill Marvin Hudson was not thwarted, and that two men were shot, one fatally.
At the sentencing hearing, the trial judge told defendant she had presided over defendant and Henry’s trials, and observed that “none of this would have come about but for you.” The trial judge said that defendant wanted Marvin Hudson *341 dead because “he ripped you off of money.” She stated that the text messages were clear, and that defendant was the one who instigated the entire incident, but that did not reduce the culpability of her co-defendant, Henry. The trial judge asserted that she had considered the sentencing guidelines pursuant to La.C.Cr.P. art. 894.1, and that a sentence of 17 years at hard labor in the Department of Corrections would be an appropriate sentence in this case, and that any lesser sentence would deprecate the seriousness of this crime. Defense counsel then informed the trial judge that he was filing at that time a formal motion to reconsider sentence. The trial judge immediately denied the motion.
Afterward, defense counsel said he wanted to put on the record that prior to this conviction, defendant had no convictions either as an adult or as a juvenile, that she was gainfully employed, that she maintained a residence inside this State, and that she had never run into any trouble with the law. Defense counsel asked the trial judge to consider these factors and give defendant a lesser sentence at that time. The trial judge responded that she had considered defense counsel’s arguments, that she was well-aware that defendant had no prior criminal history, and that she had read the pre-sentence investigation prepared by the probation and parole department. The trial judge subsequently denied the motion to reconsider sentence a second time.
lapln her written motion to reconsider sentence, defendant argued that the sentence was excessive based on the fact that she had no prior convictions and that prior to her arrest she had been gainfully employed and maintained a residence. Defendant did not raise the issue of the trial judge’s failure to consider pertinent mitigating factors under La.C.Cr.P. art. 894.1 at the trial court level. As such, defendant is precluded from raising such an issue on appeal. State v. Carter, 07-270, p. 9 (La.App. 5 Cir. 12/27/07), 976 So.2d 196, 202. In any event, where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. See State v. Declouet, 09-1046, p. 25 (La.App. 5 Cir. 10/12/10), 52 So.3d 89, 106, writ denied, 10-2556 (La.4/8/11), 61 So.3d 681.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; *342 and 3) the sentence imposed for similar crimes by the same court and other courts. Id., 07-332 at 15-16, 975 So.2d at 656.
Defendant was convicted of conspiracy to commit second degree murder in violation of La. R.S. 14:26 and 14:30.1. Under La. R.S. 14:26(B), whoever is a party to a criminal conspiracy to commit any crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; provided, however, that whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment shall be imprisoned at hard labor for not more than thirty years. Under La. R.S. 14:30.1(B), whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Therefore, under La. R.S. 14:26(B) and R.S. 14:30.1(B), defendant in the instant case was exposed to a sentencing range of not more than thirty years.
In State v. Bridges, 480 So.2d 926 (La.App. 2 Cir.1986), writ denied, 486 So.2d 732 (La.1986), the defendant, a former sheriff, conspired with others to kill the newly elected sheriff; however, the plan was thwarted. The defendant was convicted of conspiracy to commit second degree murder and sentenced to ten years at hard labor. On appeal, the defendant argued that his sentence was excessive in light of his age and the fact that a co-defendant received a five-year sentence. The appellate court asserted that the sentencing judge was not required to treat co-defendants equally. It found that the sentence was not excessive, noting that it was only one-third of the maximum, and that it was not out of proportion to |22the severity of the offense, nor was it a purposeless imposition of pain and suffering. Id., at 928.
In State v. Leger, 04-1467 (La.App. 3 Cir. 6/1/05), 907 So.2d 739, writ denied, 05-2263 (La.4/17/06), 926 So.2d 509, cert. denied, 549 U.S. 910, 127 S.Ct. 245, 166 L.Ed.2d 193 (2006), three women were murdered. The defendant was convicted of three counts of conspiracy to commit second degree murder and sentenced to twelve years on each count to be served consecutively. The appellate court concluded that the sentences did not shock one’s sense of justice and, therefore, the trial court did not abuse its considerable discretion when sentencing the defendant. The appellate court noted that the defendant had conspired to kill three young mothers, two of whom were the mothers of his children. The appellate court found that while defendant may not have pulled the trigger, his active participation was as heinous as the actions of his co-defendant who shot the victims with a shotgun while their children watched. It further found that the fact that the defendant was not the shooter did not detract from the shocking nature of the crimes for which he was convicted. Id,., 04-1467 at 59-64, 907 So.2d at 778-81.
In the instant case, defendant conspired with her boyfriend to murder Marvin Hudson because Marvin stole her money. The record showed that two men jumped out of a vehicle and fired at least 25 rounds at Marvin Hudson’s residence and at several vehicles parked in front of the residence, with individuals standing outside and sitting in those vehicles. Children were inside of the residence at the time of the shooting. Marvin Hudson was not killed; however, his brother, Jonathan Hudson was, and another individual was injured. Although the seventeen-year sentence is somewhat higher than the ten and twelve-year sentences in the above cases, we find that considering the nature of the crime and the naturej^and the background of the offender, the mid-range seventeen-year sentence was not constitutionally ex *343 cessive as it was not grossly disproportionate to the offense nor did it impose needless and purposeless pain and suffering.[7] We find that defendant’s third assignment of error lacks merit.

ERRORS PATENT DISCUSSION

Defendant requests errors patent review. This Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request. The review does reveal errors patent.
Arraignment. The record does not reflect that defendant was arraigned on the amended bill of information. La.C.Cr.P. art. 555 provides that:
[a]ny irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
Here, defendant proceeded to trial on the amended charge without objection, thereby waiving any irregularity. Therefore, we find that no corrective action is necessary. See State v. Morton, 12-27, p. 17 (La.App. 5 Cir. 5/31/12), 97 So.3d 1034, 1044-45, writ denied, 12-1476 (La.1/18/13), 107 So.3d 625.
Sentencing Restrictions. On March 28, 2012, the trial judge sentenced defendant to 17 years at hard labor and granted defendant’s motion for appeal. Thereafter, on April 2, 2012, the trial judge, on her own motion, amended the sentence to reflect that it was to be served without benefit of parole, probation, or 1 ..¿suspension of sentence. However, in accordance with statutory and jurisprudential rules, the trial court should not have restricted all benefits.
The issue is whether a defendant found guilty of conspiracy to commit second degree murder is eligible for benefits under La. R.S. 14:26(B). The rule establishing the term of sentence for a criminal conspiracy to commit a crime punishable by life imprisonment-here, second degree murder [8] provided in La. R.S. 14:26(B), which provides:
Whoever is a party to a criminal conspiracy to commit any crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; provided, however, whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment shall be imprisoned at hard labor for not more than thirty years. (Emphasis added).
The 17-year hard labor term of sentence for the particular conspired offense, La. R.S. 14:30.1, is clearly within the 30-year parameter established by La. R.S. 14:26(B).
In State v. Ferguson, 393 So.2d 710 (La.1981), the Louisiana Supreme Court pro *344 vided for an exception of parole eligibility for the murder conspirator. The Court held that a person found guilty of conspiracy to commit first degree murder is eligible for parole under the provisions of La. R.S. 14:26(B). The Court reasoned that La. R.S. 14:26(B) facially does not restrict availability of parole to a murder conspirator. Ferguson, 393 So.2d at 712. The Ferguson Court further gave effect to the “provided, however” clause in La. R.S. 14:26(B) and held that sentences imposed for conviction of conspiracy for offenses punishable for death or life imprisonment could not, as a matter of law, be without benefit of parole. Because the sentencing provisions are the same for conspiracy to commit either 12sfírst or second degree murder, defendant’s sentence must be corrected to allow for the possibility of parole. See Ferguson, supra; State v. Battaglia, 03-692 (La.App. 5 Cir. 11/25/03), 861 So.2d 704, 711, writ denied, 04-1701 (La.4/29/05), 901 So.2d 1058.

DECREE

Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and remand for correction of sentence to reflect defendant’s eligibility for parole. We order the Clerk of Court for the 24th Judicial District Court to transmit the original of the amended commitment to the officer in charge of the institution in which defendant is incarcerated, and to the Legal Department of the Louisiana Department of Corrections. See State v. Moody, 11-343, p. 15 (La.App. 5 Cir. 12/28/11), 83 So.3d 1107, 1115; State ex rel. Stark v. State, 06-1457 (La.2/16/07), 949 So.2d 409, 410.

CONVICTION AFFIRMED; REMANDED FOR CORRECTION OF SENTENCE.

. La. 14:30.1 was amended in 2013; however, those amendments are not germane to the instant case.

. The same bill also charged Kendrick Henry with the same offense. On August 23, 2011, the State orally moved to sever the defendants, and the trial court granted the motion. Henry’s case proceeded to trial on August 23-26, 2011 in advance of the instant matter.

. La. C.E. art. 801 provides, in part (D):
A statement is not hearsay if: ... (3) The statement is offered against a party, and the statement is (b) ... by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established.
In Section 1 of Act 1300 of 1995, the Legislature substituted "is" for "has been." As such, the law no longer requires the prima facie case of conspiracy to be introduced in evidence before the conspirator’s statement. A prima facie case of conspiracy remains a factual precondition to the admissibility of the conspirator’s statement, but a co-conspirator's statement, sought to be admitted, may serve as evidence of the foundation requirement. See State v. Ellis, 94-599, p. 17 (La. App. 5 Cir. 5/30/95), 657 So.2d 341, 351, writs denied, 95-2095 (La. 12/8/95), 664 So.2d 421 and 95-1639 (La. 1/5/96), 666 So.2d 300.

. La. C.E. art. 104(A) provides:
A. Questions of admissibility generally. Preliminary questions concerning the competency or qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of Paragraph B. In making its determination it is not bound by the rules of evidence except those with respect to privileges.
B. Relevancy conditioned on fact. Subject to other provisions of this Code, when the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

. It is noted that this case is published on the First Circuit Court of Appeal’s website and, therefore, may be cited as authority despite the fact it is not designated for publication. See State in the Interest of S.L., 11-883, p. 2 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 827 n. 2; See also La. C.C.P. art. 2168.

. See also Stephenson v. State of Texas, 2011 WL 4027721 (Tex.App.-Amarillo) (unpublished opinion), wherein the appellate court concluded that the text messages from the defendant's sister to another person were not testimonial under Crawford, because the texts were statements made during a confidential conversation between friends, and there was no indication that the sister's statements would be used in a prosecution of her brother.

. Compare State v. Cumella, 517 So.2d 1059 (La.App. 3 Cir.1987), where the court upheld an 18-year sentence for a defendant convicted of conspiracy to commit first degree murder (the victim died), an offense with the same sentencing range as a conviction for conspiracy to commit second degree murder. See also State v. Dozier, 520 So.2d 875 (La.App. 3 Cir.1987), where the court upheld a 15-year sentence for a defendant convicted of conspiracy to commit first degree murder (the victim escaped injury).

. La. R.S. 14:30.1(B) provides:
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.