ROBERT A. CHAISSON, Judge.
12In this appeal, defendant, Jamar Owens, asserts that his criminal convictions should be reversed and a new trial granted based on improper prosecutorial rebuttal argument and the improper admission of recorded telephone calls from the Jefferson Parish Correctional Center. For the reasons that follow, we find no merit to defendant’s arguments. Accordingly, we affirm his convictions and sentences; however, we remand the matter for correction of errors patent as noted herein.

PROCEDURAL HISTORY

On July 22, 2013, defendant proceeded to trial in Jefferson Parish on the following charges: armed robbery of Vincent Davis, in violation of La. R.S. 14:64 (count one); attempted armed robbery of Donika Jackson, in violation of La. R.S. 14:27 and 14:64 (count two); aggravated battery of Vincent Davis and/or Alicia Bailey, in violation of La. R.S. 14:34 (count three); and two counts of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (counts five and Lseven).[1] After considering the evidence presented, the twelve-person jury, on July 24, 2013, found defendant guilty as charged on all five counts.
On August 16, 2013, the trial court sentenced defendant to ninety-nine years imprisonment on count one, forty-five years imprisonment on count two, and ten years imprisonment each on counts three, five, and seven. The trial court specified that all counts were to be served at hard labor and concurrently with one another. In addition, the trial court ordered the sentences on counts one, two, five, and seven to be served without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS

This case arises from a robbery and shooting that occurred on January 18, 2012, at a residence in Harvey on the west bank of Jefferson Parish. At the time of the incident, Vincent Davis lived at the house with his mother, Alicia Bailey, and his grandmother, Anna Davis. Donika Jackson, Mr. Davis’s girlfriend, was also present at the house at the time of the occurrence. Each of these four individuals testified at trial.
During the evening hours of January 18, 2012, Mr. Davis and Ms. Jackson were watching television in his bedroom. At about 8 or 9 p.m., Mr. Davis received a phone call from “Mar,” subsequently identified as defendant Jamar Owens, who *88 wanted to buy some movies from him. At trial, Mr. Davis explained that he earned money by selling black market DVDs and CDs, that he usually sold eight DVDs for twenty dollars, and that he had conducted business with defendant on one previous occasion.
After the phone call from defendant, Mr. Davis left the residence to go buy some food. However, when he went outside, defendant was waiting for him. The |4two engaged in conversation, and defendant gave Mr. Davis twenty dollars for the DVDs. Although it appeared that defendant was alone, Mr. Davis noticed a car parked down the street. Mr. Davis recognized the car because he had observed defendant in the car previously, along with the other men involved in the incident.
While still outside of the residence, defendant produced a gun, placed it in Mr. Davis’s face, and apparently took back the money he had given Mr. Davis for the movies. Defendant struck Mr. Davis in the head with a gun, and thereafter, a second perpetrator hit Mr. Davis. These two individuals, along with a third attacker, then forced Mr. Davis inside his house and made him lie on the floor in front of the doorway by the den area. The perpetrators demanded money, and according to Mr. Davis, they took “some money” from him, although he did not know how much.
At some point during this encounter, a dark-skinned black man, subsequently identified as co-defendant Everett Williams, entered Mr. Davis’s bedroom, placed a “big gun” to Ms. Jackson’s head, told her to get up, and demanded more money. Defendant also came into the bedroom and placed a gun to Ms. Jackson’s head. After the two repeatedly questioned Ms. Jackson about the money, defendant returned to the den area where Mr. Davis was still lying on the floor. Defendant and the third perpetrator kept hitting Mr. Davis in the head while Williams searched the bedroom.
Ms. Bailey and Ms. Davis, who were in their bedrooms, heard a noise and went to the back of the house to investigate. Upon seeing the two women, defendant and the other perpetrator in the room with Mr. Davis ran out the door. Williams then emerged from Mr. Davis’s bedroom with a gun and fired two shots as he ran from the house. The gunfire hit and injured Ms. Bailey and Mr. Davis. After Williams fled, Ms. Jackson called 9-1-1.
| r,Sergeant Charles Lee of the Jefferson Parish Sheriffs Office responded to the call, and upon his arrival, he secured the scene, conducted preliminary interviews with the victims, and assisted in the collection of evidence, which included the recovery of two spent casings, projectile fragments, and a Samsung burgundy cell phone battery cover. Following this initial involvement, Sergeant Lee turned the investigation over to Detective Bruce Ver-rette of the Jefferson Parish Sheriffs Office.
During the course of his investigation, Detective Verrette was provided with three nicknames of possible suspects, including “Mar” and “Tater.”[2] In addition, Detective Verrette obtained statements from' the victims who had arrived home from the hospital. Based on the information gathered, Detective Verrette developed defendant, whose nickname was “Mar,” Everett Williams, whose nickname was “Tater,” and Isaac Williams as suspects. He thereafter obtained photographic lineups of these suspects and pre *89 sented the lineups to the victims. Ms. Jackson positively identified defendant as the person who held a gun to her head and who hit Mr. Davis in the head with a gun. Ms. Jackson also positively identified co-defendant Williams as the individual who held a gun to her head and who shot Ms. Bailey and Mr. Davis. Likewise, Mr. Davis positively identified defendant as the individual who called him in reference to the DVDs. Further, he positively identified Williams as the person who shot him and his mother, Alicia Bailey.[3]
After these positive identifications of defendant and co-defendant Williams, Deputy Verrette obtained warrants for their arrests. They were both arrested on lfiFebruary 7, 2012. Following defendant’s arrest, police officers executed a search warrant at his Marrero residence. As a result of the search, the officers recovered one Romarm AK-47 semi-automatic rifle, one Professional Ordnance semi-automatic pistol, ammunition, and a burgundy Samsung cell phone with a missing battery cover.[4]
After the State presented its case, defendant called several witnesses to testify on his behalf. Devon Thornton, defendant’s stepbrother, claimed ownership of the AK-47 that was found during the search of defendant’s Marrero residence. According to Mr. Thornton, he purchased the gun for himself two years ago from a pawn shop, and he also provided a bill of sale showing that he purchased the gun on October 26, 2011, from Top Dollar Pawn Shop.
Deputy Jimmy Stewart of the Jefferson Parish Sheriffs Office testified that he was present at the hospital when Mr. Davis was interviewed. According to Deputy Stewart, Mr. Davis stated that nothing was taken from him other than the twenty dollars he received for the DVDs.
Sergeant Charles Lee, who had previously testified on behalf of the State, was called back as a witness by defense counsel. Sergeant Lee testified that on the night of the incident, he spoke to Mr. Davis at the crime scene, and Mr. Davis provided the nickname, “Moan,” for the person who approached him that night. Further, at the time he wrote his report, Sergeant Lee was only aware of two suspects, “Moan,”- and another unknown individual.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assigned error, defendant complains that the trial court erred in denying his motion for new trial which was based on alleged improper rebuttal 17argument by the prosecutor. Specifically, defendant contends that the prosecutor’s argument that defendants had Mr. Bailey under subpoena was an unfair and improper instance of burden shifting, that an admonition was not sufficient to cure the error, and that a new trial was warranted.
Mr. Bailey, the father of Vincent Davis, provided the police with the nicknames of the subjects, although he did not live at *90 the residence and was not present at the time of the incident. During defense counsel’s closing arguments, he referenced Mr. Bailey several times, stating as follows:
We know Vincent Bailey is the person who gave all the other nicknames other than Moan that got this ball rolling. We know it came from Vincent Bailey who we know was not at the house. Where did Vincent Bailey get his information from? We don’t know because he wasn’t called as a witness, and I ask that you don’t consider any argument from Mr. Sanderson or Mr. Paciera that says we should have called him, because the judge is going to charge you that we don’t have to present any evidence. We don’t have to call Vincent Bailey to find out why or how he got the information. You can consider for yourselves whether or not he had any information that was helpful to the State they would have called him. The State also is going to tell you he had no good information to help the State, despite all the nicknames.
In addition, defense counsel mentioned Mr. Bailey numerous other times during closing argument and again commented that the State would have presented Mr. Bailey as a witness if he had any information helpful to the State.
After closing argument by defense counsel, the State, in its rebuttal argument, stated as follows:
I don’t know if Ms. Sheppard and Mr. Louque [defense counsel] want me to bring in everybody in the neighborhood, .... I don’t know if they want me to bring everybody in, but it is not our obligation. We were not asked to do that. We are asked to prove the elements of each of the crimes beyond a reasonable doubt. We have done that over the course of the last two days.
Mr. Louque and Ms. Sheppard had Mr. Bailey under subpoena. They could have—
| ^Defense counsel requested a mistrial on the grounds that defendant was under no obligation to call Mr. Bailey as a witness and that the prosecutor’s remark that the defense had Mr. Bailey under subpoena shifted the burden to defendant. The State explained that the prosecutor was only responding to defendant’s arguments that Mr. Bailey was under the State’s control and the State could have presented him as a witness. The trial court denied defense counsel’s request for a mistrial and admonished the jury as follows:
Ladies and gentlemen, as we have told you during voir dire, as the attorneys have stressed, the defendants do not have the burden of proof. They don’t have to call any wititesses. They don’t have to produce any evidence. The burden is always upon the State of Louisiana to prove the elements of this crime, to prove each and every element of the crime beyond a reasonable doubt. It is not up to the defense. It is totally up to the State.
The last comment made about the defense calling witnesses, they don’t have to call anyone. They don’t have to subpoena anyone. Any mention about subpoenas of witnesses that the defense may or may not have used or called, that’s not evidence; and when you go in the back to deliberate, you are only to base your deliberations on what you saw and heard from the witness stand, okay.
Following his conviction, defendant also raised this error in his motion for new trial, which was denied by the trial court. Defendant now seeks review of the trial court’s denial of his motion for a new trial asserting that the State’s improper rebuttal argument shifted the burden of proof to defendant. Defendant asserts that al *91 though the trial court admonished the jury after denying defendant’s motion for a mistrial, the admonishment was insufficient to cure the error and a new trial was warranted.
The prosecutor has considerable latitude in making closing arguments; however, this latitude is not without limits. State v. Greenup, 12-881 (La.App. 5 Cir. 8/27/13), 123 So.3d 768, 776, writ denied, 13-2300 (La.3/21/14), 135 So.3d 617; State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 927, writs denied, 04-1640 (La.11/19/04), 888 So.2d 192 and 08-2370 (La.1/30/09), 999 So.2d 753.
La.C.Cr.P. art. 774 defines the scope of argument and rebuttal as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
The trial judge has broad discretion in controlling the scope of clpsing arguments. A conviction will not be reversed due to improper remarks during closing arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Greenup, 123 So.3d at 775-76.
In State v. Uloho, supra, the defendant raised the same argument asserted herein. In that case, during closing arguments, defense counsel argued that the State failed to call certain witnesses. During rebuttal argument, the prosecutor commented that defense counsel had the same subpoena power as the State. The trial court overruled the defendant’s objection. On appeal, the defendant contended that “the trial court erred in allowing the State to refer to defendant’s subpoena power in rebuttal because the remarks misled the jury into believing that defendant had the burden of proving her innocence.”
Considering the prosecutor’s remarks in context, this Court determined that the prosecutor’s comments in rebuttal regarding the defendant’s subpoena power were in response to the defendant’s remarks. In addition, this Court noted that the trial judge instructed the jury that the opening statements and closing arguments of the attorneys were not to be considered evidence and that the defendant was not 110required to call any witnesses or produce any evidence. Therefore, the trial court did not err in overruling the defendant’s objections. State v. Uloho, 875 So.2d at 928.
Likewise, in the present case, the prosecutor’s rebuttal was clearly in response to defense counsel’s closing argument. In fact, in his brief, defendant’s appellate counsel acknowledges the comments made by defense counsel to the jury during closing argument that the State would have called Mr. Bailey if he had any information helpful to the State.
Moreover, we note that the trial court sufficiently admonished the jury that the prosecutor’s comment regarding the subpoena power of the defense was not evidence and that defendant was not required to call any witnesses or produce any evidence. The judge further admonished the jury that the State had the burden of proof and not the defense. In addition, during the final jury charges, the trial judge instructed the jury that the defendants are not required to prove their innocence, that the defendants are not required by law to call any witnesses or produce any evidence, and that the burden is always on *92 the State to prove defendants’ guilt beyond a reasonable doubt. The trial court further instructed the jury that closing arguments are not to be considered as evidence.
In light of the jurisprudence discussed herein and considering the prosecutor’s remark in context, we find no error in the trial court’s denial of defendant’s motion for new trial. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assigned error, defendant contends that the trial court erred in denying his motion in limine seeking to prohibit the jury from hearing recorded telephone calls of defendant while he was incarcerated and in subsequently denying his motion for new trial predicated upon the same ground.
hiAfter being given the opportunity to listen to the telephone calls, defense counsel, on the final day of trial, made an oral motion in limine to exclude the recorded jail telephone conversations alleging a violation of defendant’s right to confrontation. Defense counsel did not object to defendant’s statements on the recordings, but contended that the statements of other parties were hearsay statements that implicated defendant, that those hearsay statements were extremely misleading, and that he was denied his right to confrontation by not being able to question these individuals.
In response, the State argued that jailhouse telephone conversations had been used in numerous other cases, that the statements made by other individuals did not implicate the hearsay rule or the Sixth Amendment right to confrontation, and that the statements were only used to give context to the admissions that defendant himself made. After listening to the arguments of counsel, the trial court took the matter under advisement and subsequently allowed an excised copy of the telephone conversations to be played for the jury.
Following his conviction, defendant filed a motion for new trial alleging as error the trial court’s denial of his motion in limine to exclude the telephone conversations. The trial court denied defendant’s motion for new trial, and defendant now challenges the denial of his motion in limine and the subsequent denial of his motion for new trial.
Defendant argues that the recorded jailhouse telephone conversations should not have been allowed into evidence because the information contained therein was inadmissible hearsay and denied defendant’s right to confront the other party to the conversations at trial. Defendant seems to particularly complain about the portions of the conversations indicating that a gun was found in his room, that he was | ^looking for someone to take his charge, and that he would receive ten years imprisonment. For the reasons that follow, we find no merit to these arguments.
The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront witnesses against him. State v. Jackson, 03-883 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118. The Confrontation Clause bars the admission of an out-of-court “testimonial” statement against a criminal defendant unless the declarant is unavailable and the defendant had a proper opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
*93 While the Crawford Court specifically declined to define “testimonial,” it recognized that, at a minimum, testimonial statements include “prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.” Crawford v. Washington, 124 S.Ct. at 1374. The Supreme Court stated that “testimony” is “[a] solemn declaration or affirmation made for the purpose of establishing of proving some fact.” Crawford v. Washington, 124 S.Ct. at 1364.
The Sixth Amendment bestows a right of confrontation to confront witnesses who “bear testimony” against him. According to the Supreme Court, an accuser making a formal statement to government officials bears testimony in a sense that a person making a casual remark to an acquaintance does not. Some examples of testimonial statements include affidavits, custodial examinations, depositions, prior testimony, confessions, or similar pretrial statements that declarants would reasonably expect to be used in a prosecution. Crawford v. Washington, 124 S.Ct. at 1364; State v. Lang, 13-21 (La.App. 5 Cir. 10/9/13), 128 So.3d 330, 339, writ denied, 13-2614 (La.5/2/14), 138 So.3d 1244; State v. Leonard, 05-42 (La.App. 5 Cir. 7/26/05), 910 So.2d 977, 989, writ denied, 06-2241 (La.6/1/07), 957 So.2d 165.
By contrast, non-testimonial statements do not cause the declarant to be a witness within the meaning of the Sixth Amendment and thus are not subject to the Confrontation Clause. Davis v. Washington, 126 S.Ct. at 2273. Phone calls from an inmate to another private citizen are generally non-testimonial. In State v. Norah, 12-1194 (La.App. 4 Cir. 12/11/13), 131 So.3d 172, 190, writs denied, 14-0084 (La.6/13/14), 140 So.3d 1188 and 14-0082 (La.6/20/14), 141 So.3d 287, the appellate court discussed the nature of inmate calls as follows:
Phone calls from an inmate to another private citizen are generally ‘non-testimonial.’ These conversations are simply too attenuated in kind from a police interrogation. While inmates are warned that their calls are being recorded, the statements of inmates and those with whom they are speaking are ‘non-testimonial’ in that they are not attempting to prove some fact for introduction at trial such as when the police interrogate a suspect. These statements are not made ‘to a police officer, during the course of an investigation, or in a structured setting designed to elicit responses that are intended to be used to prosecute him.’ Castro-Davis, 612 F.3d at 65. These calls were conversations amongst friends, and in no way could be considered testimonial, [footnote omitted]
In State v. Massey, 11-357 (La.App. 5 Cir. 3/27/12), 91 So.3d 453, writ denied, 12-991 (La.9/21/12), 98 So.3d 332, the trial court allowed a recorded telephone conversation of the co-defendant, who was incarcerated at the time, and his father to be admitted at trial. During the conversation, the co-defendant instructed his father to offer a witness five hundred dollars to make a statement that he was unable to identify the co-defendant and his brother as the persons who committed the crime. On appeal, the defendant complained that his right of confrontation was violated when he did not have the opportunity to cross-examine the co-defendant. This Court found that the recorded telephone conversation was 114made under circumstances that were non-testimonial in nature and thus did not violate the defendant’s Sixth Amendment right to confrontation and cross-examination of the declar-ant. State v. Massey, 91 So.3d at 479.
Likewise, in the present case, we find that the recorded telephone conversa *94 tions are non-testimonial under Crawford and do not violate defendant’s right of confrontation. The statements contained in the recorded' telephone conversations were spoken in casual conversation between defendant and friends and/or family members. Additionally, the parties had no expectation that their statements would be used in a prosecution, as they spoke informally and without coercion. See State v. Lang, 128 So.3d at 338-40.
Moreover, in addition to being non-testimonial, the recorded telephone conversations do not constitute hearsay as they were- not offered to prove the truth of the matter asserted. La.C.Cr.P. art. 801(C). Rather, the statements of the persons other than defendant were offered to provide a context for defendant’s portion of the conversation.
Based on the foregoing, we find that the recorded jailhouse conversations were properly admitted into evidence, and thus, we find no merit to defendant’s argument that the trial court erred in denying his motion in limine and his subsequent motion for new trial. This assigned error is likewise without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals two errors in the “State of Louisiana Uniform Commitment Order” with regard to the date of the offense and the adjudication date. First, while the uniform commitment order correctly reflects the offense date of February 7, 2012, for the charges of possession of a firearm by 11sa convicted felon, it fails to reflect the offense date of January 18, 2012, for the armed robbery, attempted armed robbery, and aggravated battery charges. In addition, the uniform commitment order incorrectly reflects the adjudication date as June 17, 2013; the actual adjudication date is July 24, 2013.
This Court has previously remanded a case for correction of the uniform commitment order in its error patent review. State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36. Therefore, we direct the trial court to make the appropriate entries reflecting these changes and direct the Clerk of Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ Legal Department. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846; State v. Lyons, 134 So.3d at 36.
For the reasons set forth herein, we affirm defendant’s convictions and sentences. The matter is remanded for correction of errors patent as noted herein.

CONVICTIONS AND SENTENCES AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS.

. Co-deféndant Everett Williams proceeded to trial with defendant and was convicted of six criminal charges. His appeal is currently pending before this Court.

. Vincent Bailey, the father of Vincent Davis, provided the police with the nicknames of the suspects.

. Although Mr. Davis did not initially provide police with the names of the perpetrators, he testified at trial that he recognized all three of them and knew them by their nicknames. He admitted that at first, he did not cooperate with the police and told them that he only saw the face of one perpetrator, Mar. His family subsequently convinced him to cooperate, at which time he gave a statement and made positive identifications of defendant and Williams in photographic lineups.

. With regard to the charges of possession of a firearm by a convicted felon, the State offered a stipulation that defendant’s certified conviction record showed that he was convicted in Jefferson Parish on May 5, 2010, for attempted armed robbery.